REUBEN B. LOCKWOOD vs. THE MIDDLESEX MUTUAL ASSUR-
ANCE COMPANY.

The charter of a mutual fire insurance company provided that no insurance effected by the company should be valid unless the insured had a good unincumbered title thereto or unless his true title and the incumbrances were fully disclosed and specified in the policy. Held to be enough if the title was actually good, although apparently defective on the records.

In the present case an outstanding legal title in a mortgagee, which was of more than fifteen years standing at the time the policy was issued, with nothing to to prevent the operation of the statute of limitations, was held not to affect the title within the meaning of the above provision.

And held that an ordinary lease of the property is not an incumbrance within the meaning of the above provision.

A lease of five years in the present case held not to be such an encumbrance.

A life lease or one for ninety-nine years would present a different question.

In the present case the proposals showed that the premises were to be occupied by a tenant. Held that the insurance company, thus having notice that a lease existed and making no enquiry, could not make the objection.

The charter provided that whenever any building insured by the company should be alienated, by sale or otherwise, the policy should become *ipso facto* void. The policy was issued to R and W, who were tenants in common. While the policy was in force W sold and transferred his interest in the property to R. Held not to be such an alienation as was intended by the charter.

The alienation intended is a sale by the insured to a party not insured. A transfer of interests between parties jointly insured will not affect such a policy.

Lockwood *v.* Middlesex Mut. Assurance Co.

Whether, where a policy is issued to two persons jointly, and one transfers his interest to the other during the life of the policy, and the policy is afterwards renewed in the names of both, the renewal is not inoperative as to the person who had parted with his interest and operative for the full amount as to the other: *Quære.*

The renewal certificate produced in court had the name of *W*, who had transferred his interest to *R*, erased. A question was made on the trial whether it was erased before the certificate was delivered or after, and the jury, under a charge of the court to which exception was taken, found that it was erased before. Held, on a motion for a new trial on the ground that the verdict was against the evidence, that if there were no other reason for sustaining the verdict, the court would hesitate to set it aside to enable a technical defense to prevail against manifest justice.

There is no legal objection to a renewal of a policy to one of two parties originally insured.

In a suit on the policy the declaration alleged as a part of the consideration, "the further sum of $825 pledged to be paid to the defendants by note." The language of the policy was—"and the pledge of $825 as provided in the charter of said·company." The charter authorized policies to be so framed as to create a pledge without a note. Held to be no substantial variance.

The conditions of a policy are not a part of the consideration of the contract. The insured cannot recover without having performed them, but it is not a part of his agreement to perform them.

Where a policy, made originally to two persons, is renewed to one of them, it is not a variance for the party to whom it is renewed to declare upon it as a contract with himself alone.

A renewal of a policy need not be under seal, although the policy is so.

The policy required that a magistrate should certify that the notice of the loss was sworn to before him and that he believed it to be true. The magistrate certified that it was sworn to before him and that he believed that the insured had really by misfortune and without fraud or evil practice sustained by the fire damage to the amount stated in the affidavit. Held to be sufficient.

The notice of the loss, thus sworn to and certified, reached the defendants in March, and no objection to its sufficiency was made by them until after the suit was brought in August following. Held that this was an acceptance of the certificate as a satisfactory compliance with the requirements of the policy.

By the terms of the policy the notice of the loss was to be given "immediately." Held that the term was not to receive a literal construction, and that the question whether notice had been given immediately was one of fact for the jury.

The charter of the company provided that if there should be any other insurance upon the property, that made by the company should become void unless such double insurance was assented to by the directors and endorsed on the policy by the secretary. Held that the other insurance here intended was insurance effected elsewhere after the issuing of the policy by the defendants, or if previously existing, not then known to them, and that the provision did not apply to a policy previously existing which was mentioned in the proposals for insurance and in the defendants' policy.

The building insured was described in the proposals as "a three-story frame dwelling, occupied as a boarding-house; to be used and occupied for the usual

purposes of such a building by a tenant." The policy described it as "a frame dwelling-house, occupied as a boarding-house," with this later clause: "Occupancy—tenant." The house was vacated by the tenant in January during the life of the policy. The plaintiff made an effort to procure a tenant, but failed. He then offered the house rent free until April 1st, but without success. He then notified the agent of the company that the building would be vacant till April and requested permission to have it so. The agent made a memorandum of it and said it should be all right. The building was burned on the 19th of February. The policy contained a condition that if the risk should be increased by any means beyond the control of the insured he should inform the company as soon as it came to his knowledge, and that they should have the right to raise the rate of premium or terminate the insurance; and that if the risk was increased by any means within his control the policy should be void unless it was done with the written consent of the company. There was no stipulation in the policy that the non-occupancy of the building should affect the insurance. Held—1. That as the building was insured as a house occupied by a tenant, a temporary vacancy from the leaving of a tenant or between tenants was to be regarded as in the contemplation of the parties as a part of the risk. 2. That where the vacancy was of longer continuance it was sufficient for the insured to give notice of the fact to the company that they might take action in the matter if they desired. 3. That, there being no stipulation that the vacancy should avoid the policy, and as it could do so only by increasing the risk, the question whether the risk was increased by it was one of fact for the jury. (Two judges dissenting with regard to the effect of the vacancy upon the policy.)

ASSUMPSIT on a policy of insurance; brought to the Superior Court in Fairfield County, and tried to the jury on the general issue, with notice, before *Culver, J.* Verdict for the plaintiff, and motions in error and for a new trial by the defendants. The case is sufficiently stated in the opinion.

*S. L. Warner* and *R. E. DeForest*, in support of the motions.

*J. H. Olmstead*, with whom was *E. L. Scofield*, contra.

CARPENTER, J. On the 19th day of November, 1869, the defendants issued a policy of fire insurance to W. B. and R. B. Lockwood, for a period of three years. At the termination of that period the defendants issued a certificate of renewal for another period of three years. In that certificate the name of W. B. Lockwood is now erased. Whether it was erased before or after delivery is one of the questions in the case. During the second term of the policy the property insured was destroyed by fire.

The plaintiff brought an action on the policy and at the trial had a verdict. Several grounds of defense were interposed, which will be separately noticed.

The defendants moved for a new trial for a verdict against evidence, for errors in receiving and rejecting testimony, and for misdirections to the jury. There is also a motion in error predicated on a motion in arrest for insufficiency of the declaration.

1. It was claimed by the defendants that the name of W. B. Lockwood was erased from the renewal certificate after it was executed and delivered to the plaintiff.

On this point the court charged the jury that the presumption was that it was erased before delivery, and that the burden of proof was on the defendants to prove that it was erased afterwards. The jury found that it was erased before, and the defendants insist that that finding was against the evidence.

There was evidence on both sides. In addition to direct testimony there were facts and circumstances admitted or sworn to corroborating with more or less force the claims of each party. It is not for us to say on which side was the preponderance. The jury have determined that, and we cannot say that they came to a wrong conclusion. This ground of defense is purely technical and does not affect the real merits of the case. The view we take of the consequences of the sale to the plaintiff of his brother's interest in the property shows that the sale did not terminate the policy, but it continued in force insuring the plaintiff alone. That being the condition of the parties, we are inclined to think (without expressly deciding the point) that if the renewal had been in form to both the legal effect of it would have been an insurance only to the plaintiff, being inoperative in respect to his brother for the reason that he had no interest in the property. If that is so the question is an immaterial one.

But however this may be, we think the result was just. The defendants admit that they issued the certificate to one or both, that they intended thereby to insure the building, that they took pay accordingly, and that the plaintiff supposed that

it was insured. We should hesitate to set aside a verdict in order that a technical defense might prevail against manifest justice.

2. The defendants say there was a variance between the contract alleged and the contract proved.

First. That the declaration alleges a premium note for $825 to be assessed for losses, and that the proof is that that sum was pledged for that purpose as a lien on the property without a note. The language of the declaration is—"and in consideration of the further sum of eight hundred and twenty-five dollars pledged to be paid to the defendants by note of that date, &c." The policy reads—"and the pledge of eight hundred and twenty-five dollars as provided in the charter of said company."

The charter, section 18, provided that the premium notes and the assessments thereon should be secured by a lien on the property. In 1859 the charter was amended authorizing policies to be so framed as to create a pledge secured on the property without a premium note. The difference in the two forms seems to be this—both pledge a certain sum secured by a lien on the property, one with a premium note and the other without, and this difference constitutes the variance. We do not think there is any variance, the substance of the transaction being the same in either case.

Second. That the contract declared on was a contract with the plaintiff alone, and that the contract proved was with the plaintiff and W. B. Lockwood.

The policy first issued to both. After one ceased to have an interest in the property we see no objection to its being renewed to the other and thus during the period of renewal making it a contract with him alone. The jury have found that it was so renewed and that disposes of this question.

Third. It is claimed that a part of the consideration of the policy was an agreement by the insured to keep and perform all the conditions therein contained, and inasmuch as it is not so alleged there is a variance.

We do not understand that the conditions in the policy are any part of the consideration. They are expressly stated as

conditions and not as a part of the consideration. It is true the insured. must keep and perform them or the policy is inoperative; but he has nowhere agreed to do so. It is not a case of mutual covenants and agreements, where the agreement of one constitutes the consideration for the promise of the other. We think there is no variance.

3. It is claimed that the true state of the title was not given when the policy issued and when it was renewed.

First. The evidence shows that on the 21st day of October, 1854, one Hezekiah Bulkley mortgaged the building to Charles E. Smith to secure the payment of $1,000 evidenced by a note payable on demand, which mortgage was recorded the same day. The proposals and the policy make no reference to this mortgage. There was no evidence that the debt was ever paid, and the town records show no release of the mortgage title until 1875, when the representatives of Charles E. Smith for the nominal consideration of one dollar executed a quit-claim deed to the plaintiff. The existence of this mortgage was not known to the plaintiff when he applied for insurance. The court below, following the case of *Warner v. The Middlesex Mut. Assurance Co.*, 21 Conn., 444, charged the jury that "if the mortgage debt was not paid at maturity this mortgage avoids the policy." As there was no evidence of payment it is difficult to see how there can be any presumption that the debt was paid immediately after the mortgage was given. On the contrary the presumption is, from the well known course of business in such cases, that the note, if paid at all, was paid subsequently. So that if the strict law applied to the case in the court below is to govern it is difficult to vindicate the finding of the jury. The question then arises whether the case referred to is applicable to this case. In that case there was a mortgage title outstanding not barred by the statute of limitations, and which might be used to sustain an action of ejectment brought by the mortgagee or to defeat one brought against him. In this case the mortgagee's title was of more than fifteen years standing when the policy issued, and nothing appears to prevent the operation of the statute. At that time and since the mortgagee or those

claiming under him could neither maintain an action of ejectment nor defend against one upon the strength of the mortgage deed.

The charter on this subject, section 13, is as follows:— "No insurance effected on any property shall be good and valid to the insured unless he has a good and perfect unincumbered title thereto at the time of effecting such insurance, or unless the true title of the insured to the same, and the incumbrances, if any, be fully disclosed in the proposals for insurance and be also specified in the policy." We think it is a reasonable interpretation of this charter to hold it sufficient if the title is actually good and perfect, although apparently defective on the record. It cannot be that the legislature intended by a "good and perfect title" a title absolutely free from untenable claims, for that would be an impossibility. It is enough if the title may legally and successfully resist all such claims. A title acquired by adverse possession is sufficient. So also an incumbrance outstanding which is itself barred at law and in equity by the statute of limitations is not a real imperfection in the title. The defendants seeking to avoid the policy on the ground that the mortgage was an incumbrance are bound to show that it was such in reality as well as in appearance. This they have failed to show, and a new trial ought not to be granted on that ground.

Second. The defendants claimed that the true title was not stated for the reason that the proposals did not state particularly a lease of the premises to one Ellen Robinson for five years, dated May 11th, 1869, and on record. Evidence to prove the lease was offered and rejected.

The defendants also asked the court to charge the jury that inasmuch as it appeared that when the policy issued the premises were subject to a lease, and its nature and character not appearing, the pretended insurance is inoperative and void. The court did not so charge, but charged that such lease was not such an incumbrance as to avoid the policy. The proposals described the property as "to be used and occupied for the usual purposes of such a building by a ten-

ant," and as "occupied as a boarding-house." The policy contains the following: "Occupancy—tenant."

The gist of the defendants' claim is that the lease was an incumbrance and should have been more particularly described. We cannot recognise this claim as sound. The title referred to in the 13th section has no reference to possession by a tenant under an ordinary lease. A life lease or a lease for ninety-nine years might present a different question. The proposals and the policy clearly contemplate that the premises were then occupied and to be occupied in the future by tenants. A tenancy implies a lease. Whether the lease then existing was for one year or five, by parol or in writing and recorded, was of no consequence. The defendants had notice that a lease existed. Had they deemed it important to have more in detail the particulars they could have called for more specific information. They did not do so but issued the policy, and cannot now complain.

Moreover, if the defendants are right in this claim, logically every succeeding tenancy must be noticed as a change of title; and this they do not claim.

4. The next question arises under the fifth condition of insurance contained in the policy, which is as follows:—

"After property is insured, if the risk is increased by any means beyond the control of the insured, he shall inform the company thereof as soon as it comes to his knowledge, and whether so informed or not the company may raise the rate of premium or terminate the insurance. They may also exercise the same right for any reasonable cause, on giving notice to the assured or his representatives of their intention so to do. And if the risk is increased by any means whatever within his knowledge or control, or if the policy is assigned, or the property insured elsewhere, the insurance shall be void, unless the same is done by the written consent of the company; or if the building is sold or transferred the policy is void unless ratified to the assignee as per charter, section 24th."

It will be noticed that this condition contemplates an increase of risk from two causes, or rather two classes of

causes—*beyond* the control of the insured and *within* his control. The claim is that the risk was increased by reason of the vacancy of the premises at the time of the fire, and that the policy thereby became void.

To sustain this claim it is assumed that the vacancy was within the plaintiff's control. In ordinary cases that would be so undoubtedly, especially when the assured himself occupies the premises. But in this case the building was insured to be occupied by tenants, and it is so expressed in the policy. There was no contract, express or implied, that there should be no change of tenants while the policy was in force. On the contrary such changes are so frequent that they must have been contemplated as probable. During the time between the retiring of one tenant and the incoming of another there may be a vacancy which may continue for a longer or shorter time, and may exist in spite of the landlord's best efforts to prevent it. Now we can hardly suppose that the parties intended that any such vacancy, however short, would avoid the policy. Such a construction seems to us unreasonably strict. The inconvenience of such a construction is a strong argument against it. It accords better with the probable intention of the parties to hold that such a vacancy does not *ipso facto* avoid the policy. That would amply protect the rights and interests of both parties. The insured is not surprised by a technical and unexpected forfeiture of his policy, and the insurer is reasonably protected against the dangers of an increased risk. Such a vacancy may or may not increase the risk. If it does its extent will depend somewhat upon the duration of the vacancy. If for a short time—for a few days only—it would hardly be noticed, and certainly it would not be seriously claimed that the policy was thereby forfeited; if for an unreasonable time the insured is required to notify the company, who may increase the rate of premium or terminate the policy.

According to the testimony of the plaintiff the premises became vacant in January. He made efforts to procure a tenant but failed. He even offered it rent-free to one man until April 1st. He then notified the agent of the company

that the building would be vacant until the first of April and requested permission to have it so. The agent made a memorandum of it and said it should be all right. It is evident that neither party supposed that the policy had become void. Both treated it practically as a matter without the control of the plaintiff and requiring notice only unless the company should take further action. We think that was a reasonable construction of the policy and that the plaintiff substantially complied with its requirements.

A minority of the court however are inclined to take a different view and to regard the vacancy as a matter within the control of the plaintiff. Assuming that to be so, how then does the case stand? The court charged the jury on this point as follows:—"The question of increase of risk is a question of fact for the jury, and the jury are to find, first, whether the non-occupancy of the insured premises after the insurance was effected, was an increase of the risk. If you find it was an increase of the risk, the next question is, did it avoid the policy? The policy says it did unless consent was obtained. The defendants insist that such consent, to be valid and binding on the company, must have been in writing. I charge you for the purposes of this case that the company itself could dispense with the provisions of the contract requiring the consent to be in writing."

Thus two questions were submitted to the jury—first, did the vacancy increase the risk? second, if it did, did the company waive the requirement of a written permission? If the first question was determined in the negative the second dropped out of the case. To sustain the defense the jury must find the first in the affirmative and the second in the negative. A determination of either question the other way would require a verdict for the plaintiff. Now there is nothing in the record to show on which one of these questions the jury based their verdict. If the evidence will sustain the plaintiff's claim in respect to either a new trial should be refused.

It must be conceded we think that there was no evidence sustaining the claim that the company waived a written per-

mission. If it clearly appeared that the plaintiff had a verdict on that ground a new trial would be inevitable. But it does not so appear. The jury probably found that the vacancy under the circumstances did not increase the risk. Does the evidence justify that finding?

The plaintiff testified that he did not think that the vacancy increased the risk, and he seems to have been the only witness who expressed an opinion on that point; and that was on the cross-examination. The point received so little attention that it was not made the subject of direct proof. But there was evidence as to the situation of the building with reference to other buildings. It was in the thickly settled portion of the town and not in an unfrequented place. The degree of care and watchfulness exercised by the plaintiff also appears. Then there is the circumstance that the plaintiff notified the defendants' agent of the vacancy and that he did not regard it of sufficient importance to take any action in the matter. He did not increase the rate of premium or terminate the policy; nor did he treat it as a matter within the control of the assured and procure a written permission from the company that the building might remain vacant. If he had regarded it as appreciably increasing the risk the presumption is that he would have been vigilant in the discharge of his duty and would have taken such action as the exigencies of the case required. If he regarded it as of so little consequence it is not surprising that the jury should take the same view of it. Thus the case was submitted to the jury; on the one hand there was the presumption, not of law but of fact, that the vacancy increased the risk; on the other there was the opinion of the plaintiff, who was familiar with the premises, that it did not; and his opinion was supported in some measure by the circumstances to which we have adverted. And no witness expressed a contrary opinion. We may not have reached the same conclusion that the jury did, but we cannot say that they were so manifestly and palpably wrong as to require us to grant a new trial, unless we must say as matter of law that the vacancy increased the risk; and that we cannot do, as there may be many cases in which it does

not.  Perhaps in most cases it does.  "So well is this under-
stood," as the learned counsel for the defense inform us,
"that insurance companies commonly provide that when
insured premises become vacant the insurance shall cease."
But it sometimes happens as in the present case that there is
no such provision.  Then it is left an open question whether
the risk is increased or not; and when it is so left it is a
question of fact for the jury.  In this case the jury having
determined it against the company, we do not see sufficient
reason for disturbing the verdict.  This consideration dis-
poses of all the questions arising in this part of the case—the
others becoming immaterial or irrelevant.

5.  During the first term of the policy W. B. Lockwood
sold his interest in the property insured to his co-tenant, the
plaintiff, who, at the time of the fire, was the sole owner
thereof.  It is now claimed that that sale avoided the policy
under the 24th section of the charter, which provides that
"when any house or building insured under the provisions of
this act shall be alienated, by sale or otherwise, the policy
shall thereupon be *ipso facto* void."

The alienation here contemplated is a sale by the insured
to a party not insured.  Any transfer of interest between the
parties insured by the policy is not an alienation within the
meaning of the charter.  By such a transfer no new party,
with whom the defendants did not contract, is introduced,
but simply the interest of those who did contract is changed.
Such a change does not affect the risk, whether partial or
extending to the entire interest, so long as no new party is
brought into contract relations with the insurers.  If a party
parts with his entire interest the insurance as to him ceases,
and the purchaser, if a stranger to the policy, is not insured;
if before a party to the policy the insurance enures to his
benefit.

The object of this provision doubtless was to guard against
fraud, to prevent the policy from becoming a mere gaming
contract by remaining as a valid instrument in the hands of
one who is no longer interested in the property, and to secure
to the insurers contracting parties of their own choosing.

No one of these purposes is defeated by the alienation in this case. The legislature evidently did not intend that such a sale should *ipso facto* avoid the policy. In this position we are abundantly sustained by the current of modern authorities. *Pierce* v. *Nashua Ins. Co.*, 50 N. Hamp., 297; *Hoffman* v. *Ætna Ins. Co.*, 32 N. York, 405, in which the question is thoroughly discussed and many cases cited. The policy therefore, notwithstanding the sale, remained in force until the expiration of the term.

The ninth condition in the policy provides that "when a policy has expired it may be renewed for such further time and on such terms as may be agreed upon by the parties." The parties did renew it, as the jury have found, to the plaintiff alone. That this might be legally done is a logical conclusion from the point just considered. The objection that no new proposals were then filed is not tenable. The company with knowledge of the circumstances did not require any. But if the renewal certificate in any respect was not issued in strict conformity to the charter we do not think that the defendants are in a condition to take advantage of it. The form of the policy, the form of the proposals, the terms and conditions on which policies might issue and be renewed, were such as the defendants prescribed and required. The plaintiff had nothing to do or say about them. He could only accept or reject such as the defendants offered him.

To permit the defendants to issue policies and renew them, to take the premiums, and leave policy-holders to rest in the belief that they are insured, and then avoid the policy and escape liability on the ground that there was some irregularity in issuing it, for which they and they alone are responsible, would be grossly unjust. Such a proceeding would be a trap and a snare and ought not to be sanctioned by this or any other court.

6. Two questions are made under that clause in the policy requiring notice and preliminary proof of loss.

First. That the certificate of the magistrate does not meet the requirement that he should certify that the notice was sworn to before him and that he believes it to be true. He

certified that it was sworn to, and that he believed the insured had really by misfortune, and without fraud or evil practice, sustained by the fire damage to the amount estimated in his affidavit.

It is true this certificate does not literally comply with the terms of the contract, but it substantially embraces all matters relating to the good faith and integrity of the insured. The matters omitted are mostly if not entirely matters of fact which are easily proved by other and direct evidence and concerning which no dispute is likely to arise. The failure of the magistrate to certify his belief in respect to such matters is not and ought not to be a defense.

But there is another reason why this defense ought not to prevail. The affidavit came into the hands of the defendants on the second day of March, and no objection to this omission was made then or at any time before the suit was brought in August following. Had the objection been made and the defect pointed out, as we think it should have been, the defect would have been remedied. Failing to make the objection in due season we must consider that they accepted the certificate as a satisfactory compliance with the contract.

Second. It is contended that this notice was not given "immediately," as the policy requires. This claim is well founded if the word is to be taken in its literal sense. This word, and a word of like meaning—"forthwith," have frequently been the subject of judicial consideration. In *Trask* v. *State Fire Ins. Co.*, 29 Penn. St. R., 198, notice was given eleven days after the fire, and it was held not to be in season. It was further held that the facts that the secretary of the company received the notice without objection as to time, and gave instructions to the insured as to the form of the statement of his case, and that an agent of the company subsequently made examinations respecting the loss, were not a waiver of the want of due and timely notice. The same court subsequently characterized the decision as "somewhat harsh." *Edwards* v. *Lycoming Ins. Co.*, 75 Penn. St. R., 378. In that case the policy provided that the insured after a loss "shall forthwith give notice thereof to the secretary,

and within thirty days after said loss shall deliver unto said secretary a particular account of such loss or damage." Notice, which seems to be different from the "particulars of loss or damage," was given eighteen days after the fire and there were no extenuating circumstances. Held that the policy was not complied with. In *West Branch Ins. Co.* v. *Helfenstein,* 40 Penn. St. R., 289, it was held that a similar provision in a policy required "due diligence under all the circumstances," and that notice within five days was in due time. In *Railway Passenger Assurance Co.* v. *Burwell,* 44 Ind., 460, it was held that notice given six days after the injury, which happened in the city where the policy issued and where the agent resided, no reason being given for the delay, was not in due time. Held also "that the word *immediate* in such cases is not to be literally construed, but the notice must be given within a reasonable time according to the circumstances of the particular case." The case of *New York Central Ins. Co.* v. *National Protection Ins. Co.,* 20 Barb., 468, was a case of re-insurance. The policy required notice of loss to be given "forthwith." The fire occurred June 15th. The plaintiff knew of it June 18th. Notice to the defendants, the re-insurers, was given by mail June 23d, eight days after the fire and five days after notice to the first insurers, and was held sufficient. It was further held that "this provision has never been construed literally to require notice on the day. It has always been held that due diligence under all the circumstances was all that was required. There must not be any unreasonable delay or laches in giving the notice." The case of *Cashan* v. *N. Western Ins. Co.,* 5 Biss., (U. S. C. C.,) 476, was also a case of re-insurance. The property was first insured by the Fulton Fire Insurance Company of New York and re-insured by the defendants. The insured was required to "give immediate notice and render a particular account thereof in writing under oath, stating the time, origin and circumstances of the fire." The property was destroyed by fire October 9th, 1871, (the great Chicago fire.) Notice was served on the Fulton Fire Insurance Company on the 8th of December. A copy of the proof of loss

was addressed to the defendant company on the 22d of January, 1872. The Fulton Fire Insurance Company was made insolvent by that fire and a receiver was appointed. It was held "that the word *immediate* must mean a reasonable time under the circumstances," and that the notices were in due time.

It is evident from all the authorities that the words "forthwith" and "immediately" are not to receive a strict literal construction. Some time must necessarily be given. Some cases require more time, some less. To undertake to say as matter of law what shall and what shall not be regarded as reasonable time must necessarily be attended with great difficulty. Extreme cases either way may easily be determined. Between them there is a wide belt of debatable ground, and cases falling within it are governed so much by the peculiar circumstances of each case that it is much better to determine the matter as a question of fact. The court in the present case very properly submitted it to the jury, and we cannot say that the verdict was wrong. The notice called for required time to collect the facts and prepare a statement, and required time for investigation both by the insured and by the magistrate. Whether the time taken was reasonable or unreasonable was a question peculiarly within the province of the jury to determine.

7. The sixteenth section of the charter requires a member after loss to give immediate notice thereof to the president, secretary or directors of the company at their office. It is now claimed that the notice here required is distinct, and not the ordinary notice of proof of loss, and that no such notice was ever given; for which reason it is insisted that the verdict should be set aside. It may well be doubted whether the provision in the policy just considered was not designed to carry into effect the sixteenth section of the charter. If so this objection is already sufficiently answered. But if it be conceded that the notice here referred to is different—which we do not admit—it is a sufficient answer to say that no such question was made on the trial and cannot under the rules of this court be now considered.

8. It is further claimed that the twenty-second section of the charter relating to double insurance makes this policy void, and the court was asked so to charge the jury. The court very properly refused so to charge.

That section clearly contemplates other insurance effected after issuing the defendants' policy, or, if then existing, not known to the defendants; and cannot mean that a policy previously existing and mentioned in the proposals and in the policy should have that effect. All was open and fair on the part of the insured. They informed the defendants of the prior insurance and the amount, and the whole amount insured in both policies (about $8,000—the property being valued at about $12,000,) certainly was not an over-insurance. The defendants must have knowingly issued their policy for the purpose of effecting additional insurance. The defense that their policy issued for that purpose was made void by the prior insurance surprises us. To allow such a defense to prevail would operate as a gross fraud upon the plaintiff, and put into the hands of these defendants pretty effective means of defrauding the public.

9. Most of the objections to the declaration under the motion in arrest have been sufficiently considered and need not now be separately noticed. Many of the others are defective statements merely, and not omissions, and are cured by the verdict.

We do not consider it necessary that the renewal certificate should be sealed. The policy provides for its renewal; and when renewed, of which the certificate is evidence, that is the contract subsisting between the parties.

We think we have noticed and considered every material question in this case. Those not specifically mentioned are regarded as immaterial or properly disposed of in the views expressed.

There is no error and a new trial must be denied.

In this opinion PARK, C. J., and GRANGER, J., concurred.

PARDEE, J., (dissenting.) The plaintiff applied for insur-

ance upon a dwelling-house "to be used and occupied for the usual purposes of such a building by a tenant." In the policy were these words:—" Occupancy—tenant." Upon this specific description the defendant determined upon what terms it would insure.

The plaintiff came under no obligation to continue occupancy by a tenant; he only bound himself to make no use of it more hazardous than would be use by a tenant. He could occupy it himself; if he did not desire to occupy either by himself or by a tenant he could hold the defendant to its contract by watching it in such manner as that the watching would be equal to occupancy as a protection against fire.

The fifth condition of the policy provides, among other things, that if the risk is increased by any means whatever within the knowledge or control of the insured, the insurance shall be void unless the same is done by the written consent of the company. The company did not deprive itself of the protection of this condition by insuring a building described as being then occupied by a tenant; if increased risk attended non-occupancy, it did not assume such risk even if it resulted from the inability of the insured to procure a tenant. The force of the expression "occupancy—tenant," was exhausted in describing the then character of the use and in determining the degree of risk and the resulting rate of insurance. The insured obtained thereby no exemption from the duty of keeping the hazard down to that degree. If non-occupancy would increase the risk he remained bound, within a reasonable time after knowledge that a tenant had left the house, to occupy it by another, or by himself, or by a watchman, or to procure the written consent of the company to a vacancy. Failing these, he could surrender the policy and insure elsewhere.

The house became vacant on the first of January; on the 20th the plaintiff took steps to obtain the consent of the company to non-occupancy; that consent had not been given on the 19th of February when the house was burned.

The defendant requested the court to charge the jury that "if the risk was increased by the premises becoming vacant

and the same was known by the plaiutiff, it rendered the policy void, unless such vacancy was with the written consent of the company."

The court charged that "the question of increase of risk is a question of fact for the jury, and the jury are to find, first, whether the non-occupancy of the insured premises after the insurance was effected was an increase of the risk. If you find it was an increase of the risk, the next question is, did it avoid the policy? The policy says it did unless consent was obtained. The defendants insist that such consent to be valid and binding on the company must have been in writing. I charge you for the purposes of this case that the company itself could dispense with the provisions of the contract requiring the consent to be in writing."

Under the charge therefore it is possible that the verdict for the plaintiff stands upon a dispensation by the company. But the record fails to show either that the agent was expressly clothed with power to bind the company by an act of dispensation, or that it was estopped from denying his power by reason of having previously ratified such acts upon his part, or that it had dispensed with the provision.

I think there should be a new trial.

In this opinion LOOMIS, J., concurred.