Grafton,  }
March 7, 1902. }

## WARD & a. v. MARYLAND CASUALTY CO.

Where an employers' liability policy provides that the insured shall give the company "immediate notice" of an accident, a claim made on account thereof, or a suit to enforce such claim, notices given with due diligence under all the circumstances, and without unnecessary or unreasonable delay, satisfy the requirements of the contract ; and whether in a particular case the notices given were reasonably immediate, is a question of fact.

A provision in an employers' liability policy, that the insured shall furnish to the company "full particulars" of an accident, does not require him to make an exhaustive investigation, or a decision of facts upon a consideration of conflicting evidence, but merely to communicate such details as will enable the insurer to determine whether a claim is likely to be made ; and whether the information furnished in a particular case is sufficiently full under the circumstances to satisfy the requirement of the policy, is a question of fact.

The failure of an employer to forward to counsel for a casualty company the process served in an action for negligence by an employee is competent evidence on the question whether the insured reasonably aided the company in securing information concerning the suit ; but it does not as a matter of law exempt the insurer from liability under the policy, in the absence of a specific provision to that effect.

ASSUMPSIT, on an insurance policy. Facts found, and case transferred from the May term, 1901, of the superior court, by *Stone*, J.

By the policy the defendants agreed to indemnify the plaintiffs against loss from common-law or statutory liability for damages on account of bodily injuries accidentally suffered by the plaintiffs' employees and caused by the plaintiffs' negligence, subject to the following, among other, conditions, " which are to be construed as conditions precedent of this contract : (1) The assured, upon the occurrence of an accident, shall give immediate notice thereof in writing with full particulars to the home office of the company at Baltimore, Md., or to its duly authorized agent. He shall give like notices, with full particulars of any claim which may be made on account of such accident. (2) If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company, and the company will defend against such proceeding in the name and on behalf of the assured, or settle the same at its own cost, unless it shall elect to

pay the assured the indemnity " provided for in another clause of the policy. (3) " The assured shall not settle any claim, except at his own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding without the consent of the company previously given in writing ; but he may provide at the time of the accident such immediate surgical relief as is imperative. The assured when requested by the company shall aid in securing information and evidence and in effecting settlements, and in case the company calls for the attendance of any employee or employees as witnesses at inquests and in suits, the assured will secure his or their attendance, making no charge for his or their loss of time." The policy was not to be binding " unless countersigned by a duly authorized representative of the company." It was countersigned at Montpelier, Vermont, by " J. G. Brown, Agent."

The resident manager of the defendants at Boston issued a notice to persons insured, as follows : " The delay incident to the sending of notices in the ordinary way often results in our not being able to promptly investigate them. We desire to save you the annoyance of vexatious lawsuits and to make speedy settlements of claims made against you by your employees and others. This we can only do satisfactorily by being able to investigate an accident while the facts are fresh in the memory of the witnesses and before the conditions under which the accident happened are changed. We wish, therefore, that you would instruct your superintendents and foremen, immediately on the happening of an accident, to notify us on the blanks enclosed with the policy, and telephone or telegraph our attorneys, Dickson & Knowles,— telephone number, 3150 Boston,— at their expense, and they will at once send a person to make an investigation. We desire this so that we can give you the most absolute protection under our policy."

Patrick O'Connell, an employee of the plaintiffs, jumped from a building which they were taking down, and was injured, May 19, 1899. On the same day, J. G. Brown, above mentioned, sent a letter to the defendants' resident managers at Boston, saying : " A man at work for Ward & Douglass in some way jumped off the third story of the building that they are tearing down, and struck on a pile of brick and injured him to some extent, and he is now at the hospital. . . . I cannot tell you just now what made him jump, but understand that one story is that he made a misstep and jumped to save himself from falling ; and another story is that he thought that a timber was going to fall on him, and in some way in getting out of the way of it got so near as to require him to jump to prevent falling. I have no blanks to report this,

so give you this notice and will have blank filled out as soon as received." The defendants' counsel, by a letter dated May 22, addressed to the plaintiffs, acknowledged the receipt of "a letter from the insurance agent, Jos. G. Brown, informing us that a man in your employ was injured," etc., and enclosed a blank report with a request that the plaintiffs would fill it out, and sign and return it at once. The plaintiffs filled out, signed, and returned the blank. It was dated May 22, and the defendants' counsel, under date of May 24, acknowledged its receipt. To the question in the blank, " How did the accident happen? (Give full details, describing machinery, tools, staging, etc., in connection therewith. If possible give rough sketch)," the answer was: " Lost his balance on the side of the building and jumped off on to pile of brick below." To other questions they made answers to the effect that the accident was not due to want of ordinary care on the part of the injured person or of any other person. In the counsel's letter of May 24, acknowledging the receipt of the report, they say : " The facts as set forth in the report are not sufficiently full to enable us to obtain a very clear idea as to the exact cause of the accident. Can you throw any additional light on this ? From the letter that we received from Mr. Brown . . . it would appear that possibly the cause of O'Connell's jumping was that he thought that something was going to fall on him, and he jumped to get out of the way. Kindly give us any additional information that you may have which would throw light upon this point." The plaintiffs not replying to this letter, the counsel wrote them again under date of June 13, calling attention to the delay and asking them to give the matter their attention. The plaintiffs replied, June 17, as follows: " Replying to your communication, would say that Mr. O'Connell jumped from building thinking some timbers were to strike him. He is still in the hospital here at Montpelier, and his recovery is still in doubt." In a letter dated June 27, the counsel acknowledged the receipt of this letter, and said: " We are not as yet in possession of enough particulars to enable us to form a very accurate opinion as to just how this accident happened, or to pass upon the question of your liability. . . . Do you know whether or not any timbers actually fell, or, if it appeared that timbers were to fall, what was the reason of their so doing, and if the circumstances justified O'Connell in doing as he did? It is probable that there were other workmen present at the time who could throw light on this matter, and we wish you would get from them an accurate statement as to just what occurred immediately before and at the time that O'Connell jumped." The plaintiffs made no reply to this letter.

O'Connell begun an action against the plaintiffs to recover dam-

ages for his injuries, July 2, 1900. The writ was served upon one of the plaintiffs on August 2, and upon the other on August 22, and was returnable at the term of the supreme court for Grafton county which begun September 18. In a letter to the defendants' counsel, dated August 20, the plaintiffs said: "Patrick O'Connell has sued us in the sum of $5,000 for the accident that he met with here. Do you wish us to make any move toward a settlement of the matter with him?" September 17, the plaintiffs telegraphed the counsel that the O'Connell suit was in the Grafton county court, which would open the next day. September 19, the plaintiffs wrote the counsel, saying that the suit must receive immediate attention, requesting them to telegraph on receipt of the letter whether they were going to attend to the suit, and saying that if they did not the plaintiffs would have to hire attorneys. The counsel replied by telegram on September 20: "You must protect yourselves through attorney in O'Connell suit until we get authority from insurance company to defend you. New Hampshire court probably has no jurisdiction over you. Your attorney should take advantage of that fact." Under date of September 21, they wrote the plaintiffs as follows: "For the purpose merely of ascertaining how you happened to be sued in New Hampshire, and whether that court has any jurisdiction over you in the case of O'Connell, we have sent the matter to Jewell, Owen & Veazey, of Laconia, N. H. They will make some inquiries of you, and we wish you would give them all the information that they desire, promptly. We wish it distinctly understood that in taking action in this matter we are doing so without authority from the insurance company and without prejudice to the rights of the company under its policy, merely so that no disaster may happen to you through a default. As soon as we have heard from Jewell, Owen & Veazey and from the insurance company, we will communicate with you further. It is possible that the company will take up the defence of the case, but we cannot in any way commit them. We will submit the facts to them and await their instructions." Under date of September 22, the plaintiffs wrote to the defendants' counsel that, on the strength of their telegram, the plaintiffs employed counsel to appear for them in the suit before the receipt of the letter relating to the employment of Jewell, Owen & Veazey, and instructed the counsel to procure a continuance of the case. In a letter to the plaintiffs, dated September 18 and received September 23, the defendants' counsel acknowledged the receipt of the plaintiffs' telegram of September 17, and said: "On August 20 you wrote us that suit had been brought. We immediately wrote you directing that the summons in the suit be sent us at once in order that we might take the

proper steps to defend you. We have always had much difficulty in getting you to answer our correspondence. Our papers show numerous instances of failure on your part to do this. We do not know what state your case is in on account of your neglect to send us the proper papers as directed. If any of your rights have been lost by the delay, it is your own fault. We should advise you to notify your own attorney of the condition in which your suit is; and we again request you to send us the paper or papers that were served upon you, upon receipt of which we will notify the insurance company. In sending for these papers again at this late date we do not in any way prejudice the rights of the insurance company, but merely send for them so that we may notify them of the situation, and so that they may take such action as they see fit."

October 9, the defendants' counsel wrote the plaintiffs that they were instructed by the defendants to disclaim all liability in the case for several reasons, one being the neglect of the plaintiffs to notify the counsel " at the beginning of the suit according to the terms of the policy." The counsel further say: " If you desire, we will defend the case; but the insurance company will not pay any verdict that may be rendered. You have a perfect right to control your case as you see fit; but unless we hear from you to the contrary, we shall continue in the defence with the above understanding." Jewell, Owen & Veazey appeared in the case for Ward & Douglass, but were at the same time attorneys for the defendants.

The defendants received no other information than that disclosed in the foregoing correspondence and report until their attorneys investigated the case after it was entered in court. Ward testified that he gave the defendants all the information that he had concerning the accident and claim for damages, and that he had had trouble with other insurance companies and thought it best not to write any more letters than were necessary.

The court *pro forma* ruled that the correspondence and telegrams were a substantial compliance with the conditions of the policy, and found for the plaintiffs, subject to the defendants' exception.

*Scott Sloane* and *George F. Morris*, for the plaintiffs.

*Jewell, Owen & Veazey*, for the defendants.

CHASE, J. The defendants' liability depends in part upon the answer to the question, whether the plaintiffs gave them " immediate " notice in writing of O'Connell's accident, the claim made

on account of it, and the suit that was brought to enforce the claim. This involves an ascertainment of the meaning of the word " immediate " as used in the policy. The word, when relating to time, is defined in the Century Dictionary as follows : " Without any time intervening ; without any delay ; present ; instant ; often used like similar absolute expressions, with less strictness than the literal meaning requires ; as, an immediate answer." It is evident that the word was not used in this con- tract in its literal sense. It would generally be impossible to give notice in writing of a fact the instant it occurred. It cannot be presumed that the parties intended to introduce into the contract a provision that would render the contract nugatory. As " imme- diate " was understood by them, it allowed the intervention of a period of time between the occurrence of the fact and the giving of notice more or less lengthy according to the circumstances. The object of the notice was one of the circumstances to be con- sidered. If it was to enable the defendants to take steps for their protection that must necessarily be taken soon after the occurrence of the fact of which notice was to be given, a briefer time would be required to render the notice immediate according to the under- standing of the parties than would be required if the object could be equally well attained after considerable delay. For example, a delay of weeks in giving notice of the commencement of the em- ployee's suit against the plaintiffs might not prejudice the defend- ants in preparing for a defence of the action, while a much shorter delay in giving notice of the accident might prevent them from ascertaining the truth about it. The parties intended by the lan- guage used that the notice in each case should be given so soon after the fact transpired that, in view of all the circumstances, it would be reasonably immediate. If a notice is given " with due diligence under the circumstances of the case and without unne- cessary and unreasonable delay," it will answer the requirements of the contract. *Chamberlain* v. *Insurance Co.*, 55 N. H. 249, 265, 268 ; May Ins. (1st ed.), *s.* 462 ; *Ib.* (4th ed.), *s.* 462 ; *Donahue* v. *Insurance Co.*, 56 Vt, 374 ; *Lockwood* v. *Assurance Co.*, 47 Conn. 553, 568. Whether the notices were reasonably imme- diate,— like the kindred question of what is a reasonable time,— are questions of fact that must be determined in the superior court. *Tyler* v. *Webster*, 43 N. H. 147, 151 ; *State* v. *Plaisted*, 43 N. H. 413 ; *Chamberlain* v. *Insurance Co.*, *supra*, 265 ; *Austin* v. *Ricker*, 61 N. H. 97 ; *Ela* v. *Ela*, 70 N. H. 163, 165.

The defendants further allege that the plaintiffs did not give full particulars of the accident. The provision of the contract requiring full particulars did not call for unnecessary details, but only such as would enable the defendants to determine whether a.

.claim was likely to be made against the plaintiffs. Nor did it call upon the plaintiffs to make an exhaustive investigation of the cir-.cumstances attending the accident, or to decide what the facts were upon a consideration of conflicting evidence. The request, made by the defendants' resident managers in Boston of persons insured in the company, that they would notify the defendants' .attorneys by telegraph or telephone of an accident, so that they might send a person at once to make an investigation, shows that the defendants so understood the matter. The purpose of the .notice was to put the defendants upon inquiry rather than to give them full information concerning the accident. Whether the particulars furnished by the plaintiffs were sufficiently full under the circumstances to answer the requirement of the policy, is also a ·question of fact to be determined in the superior court. *Stone* v. *Insurance Co.*, 69 N. H. 438.

The provision in the third condition of the policy, that the assured when requested by the company shall aid in securing in-.formation and evidence, is of a similar nature, and should be interpreted and applied in accordance with the foregoing views.

To the defendants' claim that their liability under the policy was ended by the plaintiffs' failure to forward to the defendants' .counsel the summons or paper served upon the plaintiffs in the O'Connell action immediately after service, in compliance with the .counsel's request, it is a sufficient answer that there is no provision in the policy making such failure a cause of forfeiture of the plaintiffs' rights. Such failure would be competent evidence on the question whether the plaintiffs reasonably aided the defend-.ants in securing information concerning the action. Its weight would depend upon the circumstances, and must be determined by the tribunal charged with the duty of deciding questions of fact.

The court ruled *pro forma* that the correspondence and tele-;grams were a substantial compliance with the conditions of the policy, and found for the plaintiffs. If this means that the questions were treated as matters of law, there was error in the course .adopted and the finding must be set aside. If it means that upon a consideration of the correspondence and telegrams it was found .as a fact that there was a substantial compliance with the condition of the policy, the only additional question of law raised by the defendants' exception is whether there was sufficient evidence to warrant such a finding. The evidence was ample. Not to mention any other testimony, the request made by the defendants' ·counsel of the plaintiffs, about August 20, 1900,— fifteen months after the accident and fourteen months after the last request for further information concerning the accident,— that the plaintiffs would send the summons in the O'Connell action to the counsel

in order that they might take the proper steps to defend the plaintiffs, very strongly shows that the defendants did not understand that their liability had ceased because of any prior failure of the plaintiffs to comply with the requirements of the policy. It was a practical admission that the prior efforts of the plaintiffs to fulfill the terms of the policy had been reasonable both as to form and seasonableness. Apparently, the defendants then had full information concerning all the facts covered by the admission, except perhaps the date when O'Connell's action was begun. A finding that a notice of the beginning of the suit, given eighteen days after the service of the writ upon one of the plaintiffs and two days before its service upon the other, was "immediate" within the meaning of the word as used in the policy, would not be unsupported by the evidence.

The general finding in favor of the plaintiffs is understood to include a finding of all facts in their favor that are necessary to support the general finding, and so to include findings favorable to them upon the questions of fact above mentioned. The *pro forma* ruling is understood to have related to the facts so found. Accordingly, unless the defendants procure an amendment of the case showing that this construction is erroneous, their exception must be overruled.

*Exception overruled nisi.*

All concurred.