CURTIS ET AL. *v.* NORTH SIDE REALTY COMPANY.

[No. 16,704. Filed February 13, 1942. Rehearing denied March 5, 1942. Transfer denied April 6, 1942.]

82

*C. Severin Buschmann, Paul J. DeVault, John A. Alexander,* and *William H. Krieg,* all of Indianapolis, for appellants.

*Joseph J. Daniels* and *G. R. Redding,* both of Indianapolis (*Baker, Daniels, Wallace & Seagle,* of Indianapolis, of counsel), for appellee.

FLANAGAN, J.—A demurrer was sustained to appellants' amended complaint and that ruling is the sole error assigned here.

The amended complaint alleges in substance the following:

On December 27, 1923, The Washington Company, owning 150 acres of land in Indianapolis, leased it to the Meridian Hills Country Club Realty Company for a period of 10 years from January 1, 1923, at an annual rental of $10,663 plus insurance, taxes and assessments.

On January 18, 1924, appellee, North Side Realty Company, was organized for the purpose of buying said real estate. Its articles of incorporation provided for the issuance of 1500 shares of 6% preferred stock of the par value of $100.00 per share to mature April 1, 1934, and common stock of the total par value of $75,000. The articles contained a provision that the real estate to be bought was clear of encumbrances except current taxes and the above mentioned lease, a provision that the corporation should not have the right to convey or encumber the real estate without the consent of the holders of 90% of the preferred stock, and

a provision giving the lessee the option to purchase for the sum of $306,220.

On January 21, 1924, appellee bought the real estate and took an assignment of the lease. On October 14, 1925, appellee reduced the cash portion of the rent to $6,000 per year for a period of 4 years with the proviso that the amount of the reduction with interest should be added to the purchase price in case the lessee should exercise the purchase option. The consent of preferred stockholders was not sought or obtained to this modification.

On July 1, 1932, by agreement among all concerned, including all holders of preferred stock, the maturity date of the preferred stock was changed to December 31, 1945, the dividends reduced to 2% for the period from July 1, 1932, to December 31, 1937, and 4% from the latter date to December 31, 1940, and the lease was extended to December 31, 1945, with rental reduced to $3,000 per year until December 31, 1937, $6,000 per year for the next 3 years, and $9,000 per year thereafter, and the optional purchase price was reduced to $150,000.

On July 1, 1936, a new agreement was entered into by appellee, the lessee, and the holders of all but 194 shares of the preferred stock whereby the dividends on the preferred stock were reduced to 2% to January 1, 1942, and 3% thereafter to December 31, 1945, and the rental under the lease was reduced to $3,000 per year to December 31, 1941, and $4,500 per year thereafter. All other provisions of the lease as modified by the agreement of 1932, remained the same except the new agreement also required the lessee to deposit in a named bank the sum of $3,000 which amount was to secure the payment of dividends on the preferred stock, and to pay the rental for the last eight months

of the lease if not previously required to pay such dividends.

Since the 1936 agreement became effective the holders of the 1306 shares of preferred stock who were parties to it have been paid dividends at the rate provided therein, and the holders of the 194 shares of preferred stock who did not agree thereto have been paid dividends, at the higher rate provided in the agreement of 1932, to which they were parties.

Appellant Cassius P. Curtis is the holder of 1028 shares of preferred stock represented in the agreement of 1936. Appellant Helen C. Curtis is the holder of 174 shares of the preferred stock not represented in the agreement of that year.

Appellants contend that the rental reductions of 1925, and 1936, each constituted placing an encumbrance upon the real estate under the clause of the articles of incorporation which provides that the corporation shall not have the right to "convey or encumber" its real estate without the consent of 90% of the preferred stockholders; that such consent never having been obtained, the reductions are invalid and appellee is guilty of mismanagement in failing to collect in accordance with the original terms of the lease as modified by the 1932 agreement. They further contend that the agreement of 1936 is invalid for the additional reasons that it contemplated the consent of all the holders of preferred stock, which consent was not obtained, and because it is without consideration.

The complaint charges as additional acts of mismanagement, (1) discrimination by paying 4% dividends to the holders of preferred stock who were not parties to the 1936 agreement while paying only 2% to those who were parties, and (2) the re-issuing of acquired shares of preferred stock without the consent

in writing of the holders of all outstanding preferred stock in violation of the provisions of the articles of incorporation.

A receiver for appellee is sought.

The first question presented is whether the modification of the lease in 1925, and again in 1936, by reducing the amount of annual rentals, created *encumbrances* under the clause in appellee's articles of incorporation which provided that the corporation shall not have the right to "convey or encumber" its real estate without the consent of the holders of 90% of its preferred stock.

The answer depends upon the meaning of the word "encumber" in the involved clause. The law recognizes the fact that words do not always have the same meaning. Accurately expressive is the following statement of Justice Holmes in the case of *Towne* v. *Eisner* (1918), 245 U. S. 418, 425, 52 L. Ed. 372, 376:

> "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

So it is with the word "encumber." For instance, it has been held that an outstanding and unexpired lease is such an encumbrance as will prevent compliance with a contract to give a good and sufficient title to real estate. *Warner* v. *Hatfield* (1837), 4 Blackf. 392; *Downey* v. *Levenson* (1924), 247 Mass. 358, 142 N. E. 85; *Brass* v. *Vandecar* (1903), 70 Neb. 35, 96 N. W. 1035. But a lease was not an "encumbrance" within § 7852, Burns' Statutes Annotated 1914, which provided that a married woman should have no power to "encumber or convey" her lands except by deed in which her husband joined. *Spiro* v. *Robertson* (1914), 57 Ind. App. 229, 106 N. E. 726. And in the case of

*Lockwood* v. *Middlesex Mut. Assurance Co.* (1880), 47 Conn. 553, 559, it was held that a lease was not an encumbrance within the following provision of an insurance policy:

> " 'No insurance effected on any property shall be good and valid to the insured unless he has a good and perfect unincumbered title thereto at the time of effecting such insurance, or unless the true title of the insured to the same, and the incumbrances, if any, be fully disclosed in the proposals for insurance and be also specified in the policy.' "

Our Supreme Court in the case of *Underwood* v. *Fairbanks, Morse & Co.* (1933), 205 Ind. 316, 334, 185 N. E. 118, defines the word "encumber" as follows:

> "The word 'encumber' ordinarily means 'to charge, or burden with financial obligations or mortgages.' "

In the case of *Spiro* v. *Robertson, supra,* this court quoted with approval the following language from the case of *Sullivan* v. *Barry* (1884), 46 N. J. L. 1, 5:

> "But neither the word 'convey' nor 'encumber,' according to its ordinary signification, is expressive of the act of creating a tenancy for years in lands. The former of the terms is appropriate to the transfer of a title to a freehold, the latter to putting the property in pledge for the payment of money. . . . If it were said that a man had encumbered his land, no one, from such an intimation, would understand that such person had put it to lease."

Appellants say that in the case before us the articles of incorporation have in fact defined the word "encumber" to include leasing by so using it in the clause which states that there are no encumbrances against the property except taxes and the lease. We cannot agree with such assertion. The

meaning given a word in one part of an instrument does not necessarily define the meaning of the same word in another part of the instrument. This truth has been recognized by the Supreme Court of the United States as applicable to statutes. In the case of *Lamar* v. *United States* (1916), 240 U. S. 60, 65, 60 L. Ed. 526, 528, that court said:

> "The same words may have different meanings in different parts of the same act and of course words may be used in a statute in a different sense from that in which they are used in the Constitution."

If the purpose to be accomplished by the use of a word is clear, there will be no difficulty in giving the word the meaning intended.

The word "encumbrances" in the phrase which stated that there were no encumbrances against the property except taxes and the lease, was used for the clear purpose of expressing the idea that the purchaser would receive good and sufficient title, including the full right to use and possess the property subject only to the rights of the lessee and the right of the State to enforce payment of unpaid taxes. Lawyers know that the word is frequently used in connection with the examination of abstracts and real estate transactions as a "blanket" word to express such an idea.

When the word "encumber" was used in the clause which provides that the corporation shall not convey or encumber its real estate without the consent of the holders of 90% of the preferred stock, the purpose was quite different. There the clear purpose was to prevent the corporation from destroying or deteriorating the asset which represented the investment of the preferred stockholders.

Ordinarily common stockholders are primarily inter-

ested in the management of a corporation while preferred stockholders are primarily interested in the security of their investment. As between the two classes of stockholders, preferred stockholders are not usually interested in limiting the right of management enjoyed by common stockholders except to prevent sale of the corporate real estate or burdening it with financial obligations or mortgages. Recognizing this, provision is usually made by statute, by a restriction in the articles of incorporation, or by contract, to so safeguard the interest of the holders of preferred stock. To accomplish the purpose, provision is frequently made that the corporation shall not "convey or encumber" its real estate without the consent of a stipulated percentage of its preferred stockholders. For that purpose like provision is made in the articles of incorporation of appellee.

The purpose to be accomplished by the use of the word "encumber" being clear, the word's meaning as used in the restricting clause is clear. In the light of the purpose to be accomplished by the restricting clause, we shall examine the acts complained of to see whether or not they create an encumbrance within its meaning.

It is to be noted that under the agreements of 1925, and 1936, *only one thing was done* affecting the lease. *The amount of rent to be paid was reduced.* Neither the term of the lease nor the conditions of the option to purchase were changed. No greater term of years was granted and no more complete right of user was created. To uphold appellants' contention that the restriction was violated, we would have to say that a mere reduction of rental, *no matter how small,* and *no matter how necessary to avoid complete vacancy and consequent loss of all revenue,* would amount to placing

a new encumbrance on the property and would be invalid without the consent of the holders of 90% of the preferred stock.

No such purpose can be read into the provision which we have under discussion. To so construe the provision would result, not in the promotion of the security of the investment of the preferred stockholders, but only in the transfer of the management of the corporate affairs from the common stockholders to the preferred stockholders.

It is our conclusion that the rental reductions of 1925, and 1936, did not violate the provisions of the articles of incorporation of appellee which prohibits it from conveying or encumbering its real estate without the consent of the holders of 90% of its preferred stock.

Nor can we agree with appellants' contention that the 1936 agreement contemplated the consent of all preferred stockholders. That its validity was not to depend upon consent of all the preferred stockholders is apparent upon the face of the agreement. It provides that:

> "The holders of the preferred stock shall *respectively* become parties hereto and *respectively* be bound by the provisions hereof by signing a separate copy of this agreement, etc." (Our italics.)

The agreement further provides that it shall become effective, not when all preferred stockholders have consented, but "when the committee of preferred stockholders shall have declared this agreement operative." At no place in the agreement is anything to indicate that the consent of all preferred stockholders is required.

Appellants contend that the 1936 agreement is without consideration. But the tenant under the modifica-

tion undertook the performance of a new and additional covenant, to wit: The depositing of the sum of $3,000 with a trustee as security for the performance of its obligations under the lease as modified. That was sufficient consideration to support the agreement.

Appellants charge as an act of mismanagement the payment of 4% dividends to the holders of preferred stock who were not parties to the 1936 agreement while paying only 2% to those who were parties. We see no merit in this charge. The holders of the preferred stock on which 4% is being paid have nothing of which to complain. They receive all they claim they are entitled to. Those who receive only 2% have no complaint for they freely and voluntarily entered into the agreement that they were to receive that amount. There is no claim that they were induced to enter into the agreement by any improper means. They make no complaint of any kind except that others are getting more than they are. This presents no legal cause for the appointment of a receiver.

Finally appellants charge appellee with mismanagement in re-issuing acquired shares of preferred stock in violation of provisions of its articles of incorporation. However the articles of incorporation restrict the right of re-issuance of "redeemed" stock only. It is not alleged that any redeemed stock was re-issued.

We find nothing in the amended complaint which would entitle appellants to the appointment of a receiver for appellee. The demurrer was properly sustained.

Judgment affirmed.

NOTE.—Reported in 39 N. E. (2d) 489.