(96 App. Div. 275.)

WOOLVERTON v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. INDEMNITY INSURANCE—POLICY—NOTICE—CONSTRUCTION.

Under an employer's liability policy, providing that assured shall give immediate notice to insurer of an accident, the assured is bound to exercise ordinary care in acquiring knowledge of an accident, to the end that the insurer may be promptly furnished with the notice required.

2. SAME.

Where a voluntary association engaged in the transfer business, employing many drivers and vehicles, procures an employer's liability policy, covering loss from accidents caused by horses and vehicles—the policy requiring immediate notice of an accident to be given to the insurer—the adoption and promulgation of a rule by the assured providing that "drivers must immediately * * * make full report of any accident * * * together with the names of witnesses" shows the exercise of ordinary care to acquire knowledge of an accident.

3. SAME—KNOWLEDGE OF INSURED'S EMPLOYÉ.

Neither the knowledge of the driver of a vehicle causing an accident, nor that of an employé in charge of assured's freight depot, could be imputed to the assured, since neither of these employés had power to give the notice to the insurer himself, and hence their failure to report the accident to assured, so that immediate notice could be given to the insurer. did not forfeit the policy.

O'Brien, J., dissenting.

Appeal from Trial Term.

Action by William H. Woolverton against the Fidelity & Casualty Company of New York. From a judgment for defendant, and an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

John L. Hill, for appellant.
Charles C. Nadal, for respondent.

McLAUGHLIN, J. On the 1st of August, 1895, the defendant issued to the New York Transfer Company, a voluntary association,

of which the plaintiff is president, an employers' liability policy of insurance, and by an indorsement thereon the policy was extended so as to cover any loss resulting from any accident caused directly by the horses or vehicles used in the company's business of transporting goods or freight.    The policy contained the following clause:

"The assured, upon the occurrence of an accident and also upon receiving information of a claim on account of an accident, shall give immediate notice in writing of such accident or claim, with full particulars to the company at its office in New York City, or to the agent, if any, who shall have countersigned this policy."

On the 5th of September following the issuance of the policy, one Hannan, an employé of the transfer company, while driving one of its trucks, injured a boy named Mills, for which an action was subsequently brought against the plaintiff, and a recovery had.    It paid the judgment, and then brought this action to recover the amount thereof, and the expenses incurred in the defense.    The defense relied upon in this action was an alleged failure upon the part of the plaintiff to comply with the provisions of the policy above quoted, by giving the defendant immediate notice of the accident and claim made.

There have been two trials.    Upon the first, the complaint was dismissed at the close of plaintiff's evidence upon the ground that the failure of the transfer company to notify the defendant of the accident rendered the policy inoperative, but upon appeal the judgment was reversed, and a new trial ordered.    48 App. Div. 439, 62 N. Y. Supp. 1044.    On the second trial the defendant had a verdict, and from the judgment entered thereon the present appeal is taken.    The validity of the judgment is attacked principally upon the ground of erroneous instructions to the jury.

There is but little dispute between the parties as to the facts, which, so far as material, are substantially as follows:    The truck which Hannan was driving collided with an open trolley car; and in some way—just how does not clearly appear upon the record—the boy, Mills, who was standing upon the side step of the car, was knocked off, and the truck ran over him.    Hannan continued in the direction in which he was driving for about 200 feet, when he was stopped and taken back to where the boy was.    He saw him, and knew that he had been injured.    After waiting some time without any charge being made against him, he went away, and drove his team back to the plaintiff's stables, where he made no report of what had occurred, notwithstanding the plaintiff had a rule which required that "drivers must immediately on arriving at the stable make full report of any accident that may have occurred, together with the names of witnesses."    Four days after the accident occurred, one Sparks, who was an employé of the plaintiff, having charge of one of its freight depots, was informed by a police officer that he was looking for the driver of plaintiff's truck bearing customhouse license No. 3; that a driver of that truck had run over a boy in Brooklyn, and he desired to arrest him.    Sparks thereupon looked up his memoranda of teams sent out on the day the accident occurred, and found Hannan was the driver of the truck referred to; and he informed the officer that Hannan would be there in the evening, when he could arrest him if

he desired. When Hannan returned in the evening, Sparks asked him about the accident, and he then told him substantially what had taken place, but denied that he had been the cause of the accident, or was responsible for it in any way. The policeman did not return in the evening, Hannan was not arrested, and no report was made either by Hannan or Sparks to any officer of the plaintiff. On the 2d of October following, an attorney representing the boy called upon the general superintendent of the plaintiff, and informed him of the injuries which the boy had sustained, and that the same were caused by one of its trucks. The superintendent at once called upon Sparks for information, and he then reported the interviews which he had had with Hannan and the police officer. Immediate notice was given to the defendant of what had taken place, and of the claim made. On the 21st of October an action was commenced by the boy to recover damages from the plaintiff, and the summons and complaint were sent to the defendant. On the 29th of October the defendant acknowledged their receipt, and, after stating that the accident occurred on the 5th of the preceding September, and that no notification had been given until the 3d of October, it added that it would nevertheless defend the action, but upon the understanding that whatever it did would not prejudice any right which it might have by reason of its not having prompt notice of the accident, and inclosed an agreement for the plaintiff to sign. This it refused to do, and on the following day so notified the defendant. Notwithstanding this fact, the defendant retained the summons and complaint until the 8th of November following, when it returned them to the plaintiff; at the same time saying it declined to assume any responsibility or to defend the action.

The learned trial justice instructed the jury:

"That if Hannan on this night of September 5th knew that he had occasioned an accident to this boy, Mills, or if Hannan on this night had such information as would have caused a reasonably prudent man in his place to believe that such an accident had occurred, then * * * the plaintiff in this case had, in law, just the knowledge and just the information which Hannan had, and it was bound, under the terms of this contract, immediately or within a reasonable time to give notice to the Fidelity & Casualty Company. Whether Hannan had such knowledge—whether a reasonably prudent man in Hannan's place would have believed that an accident had occurred through his fault—is the first question of fact which you are to determine."

Subsequently the same instruction was given as to Sparks, with the exception of the dates when the evidence tended to show that he had acquired information bearing on the subject of the accident. Exceptions were duly taken to the instructions thus given, and the court was requested in various ways to instruct the jury in effect that the knowledge of Hannan or Sparks was not the knowledge of the plaintiff. The request was refused, and an exception also duly taken.

I think the exceptions required a reversal of the judgment. The plaintiff used in its business upwards of 300 horses. The purpose of the policy was to protect it against liability on account of injuries caused by them, or vehicles to which they were attached. It ought, therefore, to be fairly construed, having in mind the nature of the business, and the object sought to be accomplished by the insurance.

When this is done, it seems to me clear that the notice contemplated was one to be given by the plaintiff itself, through some of its officers, and not one to be given by some employé upon whom no duty rested, so far as the insurance itself was concerned, or the enforcement of the policy in case of liability thereunder.   It could not give the notice until some of its officers had been informed that an accident had occurred or a claim had been made.   Mandall v. Fidelity & Casualty Co., 170 Mass. 173, 49 N. E. 110, 64 Am. St. Rep. 291; Trippe v. Provident Fund Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529; McNally v. Phœnix Ins. Co., 137 N. Y. 389, 33 N. E. 475.   And this, under the record before us, was not until the 2d of October, when the attorney for the boy called upon the general superintendent.   The plaintiff, of course, was bound to exercise ordinary diligence in acquiring knowledge, to the end that the defendant might promptly be furnished with the necessary information. This, however, it seems, it did, by the adoption and promulgation of the rule above referred to, which required drivers to give immediate notice of the occurrence of an accident, and the names of witnesses of it.   Hannan or Sparks was in no sense the agent of the plaintiff, so far as the insurance in question was concerned.   Neither of them could do anything, without its knowledge or consent, which would either add to or diminish liability under the policy; and, had they so attempted, either by giving the notice or doing any other act, they would have been acting outside the scope of their employment. Nor was the knowledge which either or both had, the knowledge of the plaintiff.   As already said, neither of them had any power to give the notice; and, this being so, they could not, by withholding the knowledge from plaintiff's officers, destroy the policy.   It cannot be that either party to the contract contemplated such a thing or intended such a result.

Other errors are alleged, which, except for the conclusion here reached, would require serious consideration; but, inasmuch as they may not occur upon another trial, it is unnecessary to consider them.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event.   All concur, except O'BRIEN, J., dissenting.

O'BRIEN, J.   I dissent.   The court left to the jury the question of whether Sparks, who had general charge of the drivers and the transportation work, had reasonable ground to attribute the accident to the driver, Hannan, and charged them that, if he did, then that knowledge was knowledge of the company.   The jury evidently found that Sparks did have such cause, and hence that the company had knowledge, and had failed within a proper time to give the defendant notice, for they returned a verdict for the defendant, and from the judgment so entered the plaintiff appeals.

The plaintiff's case rests entirely upon whether notice to Sparks was notice to the company.   Reference is made to Mandall v. Fidelity Company 170 Mass. 173, 49 N. E. 110, 64 Am. St. Rep. 291, wherein it was held that "the notice was not required to be given by the driver whose team might cause the accident, but by the plain-

tiff himself," and that "the plaintiff was not chargeable with knowledge of the accident because his servants had such knowledge." I think that case, however, is distinguishable, and for the reason that not a driver, nor a mere foreman, is here concerned, but one having general charge and authority as to notice of accidents. It was Sparks' duty to look out for the drivers and the transportation details, and in the room where he worked was conspicuously posted a notice about giving information of accidents. He was thus informed of the rule. And when the officials learned of the accident from the attorney, they turned to Sparks for information, and he submitted a report. Such reports were evidently in the line of his duties. He was therefore different from a driver or a mere foreman, and was the person to whom was delegated the duty of reporting accidents. For this reason the Massachusetts case is not, I think, controlling; and it follows that the notice of Sparks was notice to the company, there being evidence to support the finding of the jury that the circumstances apprised him that an accident had occurred, which he should report.

I think, therefore, that the judgment must be affirmed.