WILLIAM H. WOOLVERTON, as President of THE NEW YORK
    TRANSFER COMPANY, Respondent, v. THE FIDELITY AND
    CASUALTY COMPANY OF NEW YORK, Appellant.

1. INDEMNITY INSURANCE — CONSTRUCTION OF PROVISION IN POLICY
REQUIRING THAT IMMEDIATE NOTICE OF ACCIDENT BE GIVEN TO INSUR-
ANCE COMPANY.   Under a clause in an employers' liability insurance
policy, providing that "The assured, upon the occurrence of an accident
and also upon receiving information of a claim on account of an accident,
shall give immediate notice in writing of such accident or claim, with full
particulars, to the company at its office in New York City, or to the agent,
if any, who shall have countersigned this policy," the assured is not bound
to give notice of an accident immediately after the occurrence thereof, but
as soon as he has become apprised of the accident, provided, however, he
exercises reasonable diligence to acquire information.   It is his duty,
therefore, to use reasonable care in the regulation of his business so that he
may be apprised with reasonable celerity of any accident that may occur in
its conduct.   If, despite the exercise of reasonable care, the insured fails
to acquire the information till after a lapse of time, but on its acquisi-
tion gives prompt notice to the insurance company, he complies with the
obligation of the policy.

2. SAME — WHEN ASSURED NOT RELIEVED FROM DUTY OF GIVING
NOTICE OF ACCIDENT TO INSURANCE COMPANY BY FAILURE OF HIS SERV-
ANTS AND AGENTS TO REPORT ACCIDENT TO HIM.   Where, however, the
assured employs many servants and the duty of acquiring information of
accidents as they occur is necessarily committed to servants or agents, he
is liable for their negligence or fault, in the discharge of this duty, to the
same extent as he would be responsible for their negligence or miscon-
duct on any other obligation to third persons, and the assured is not
relieved from such responsibility by the promulgation of rules adapted to
apprise him of accidents, whether the servants complied with the rules or
not, but his liability for the negligence of his servants or agents in failing
to apprise him of an accident must be confined to those agents whose duty
it was, either by his express regulation, or by their supervision and con-
trol in the natural and proper conduct of business over the subordinate
servants by whom the accident had been caused, to transmit such knowl-
edge to their superiors or the assured, and the assured is not chargeable
with the knowledge of the servant causing the accident or with the
knowledge or information of a co-servant of the same rank as the one
causing the accident.

3. SAME — WHEN QUESTION WHETHER ASSURED IS LIABLE FOR FAIL-
URE OF HIS EMPLOYEE TO REPORT ACCIDENT IS QUESTION OF FACT.
Where, in an action brought by a trucking company upon an indemnity

policy containing the clause in question, the insurance company defended upon the ground.that the assured did not give notice of the accident as required by the policy and it appeared that the accident was immediately reported, by the driver causing it, to a foreman, or agent, of the company, having charge of the loading of trucks at a steamship pier, who did not report it to the assured until about a month after the accident, whereupon the assured notified the insurance company, and there was evidence that, in the ordinary course of business, it was the duty of the truck drivers to report any accident to such foreman, it is reversible error for the trial court to charge that the information of such foreman in no wise constituted notice of the accident to the assured and that nothing short of information reaching the general superintendent, or some other general officer or director of the assured, was sufficient to impose on the assured the duty of giving notice to the insurance company, where there was some evidence which would have authorized the jury to find that in the natural and ordinary course of business it was the duty of the foreman to receive reports of accidents and transmit them to the general superintendent of the assured, in which case the assured would be chargeable with the delay of the foreman.

*Woolverton* v. *Fidelity & Casualty Co.*, 114 App. Div. 911, reversed.

(Argued October 10, 1907; decided November 19, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 21, 1906, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles C. Nadal* for appellant. The court erred in charging the jury that the knowledge of Sparks was not the knowledge of the plaintiff. (*Henry* v. *Allen*, 151 N. Y. 1; Story on Agency, § 140; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Hyatt* v. *Clark*, 118 N. Y. 563; *Ingalls* v. *Morgan*, 10 N. Y. 178; Reinhard on Agency, § 354; Huffcut on Agency, 150, § 142; Bowstead on Agency, 264; *Corcoran* v. *Halbowk*, 59 N. Y. 517; *Rima* v. *R. I. Works*, 120 N. Y. 433; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Lynch* v. *R. R. Co.*, 8 App. Div. 458; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 137; *Twogood* v. *Mayor, etc.*, 102 N. Y. 216.) The failure to

give immediate notice invalidates the policy.  (*S. & D. Mfg. Co.* v. *T. Ins. Co.*, 171 Mass. 357; *N. C. Co.* v. *T. Ins. Co.*, 176 Mass. 121; *D. T. C. M. Co.* v. *M. C. Co.*, 78 Pac. Rep. 135; *N. T. E. Co.* v. *M. C. Co.*, 90 N. W. Rep. 1110; *Rooney* v. *M. C. Co.*, 184 Mass. 26; *L. G. Co.* v. *Siwy*, 66 N. E. Rep. 481; *T. Ins. Co.* v. *Myers*, 57 N. E. Rep. 458; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Inman* v. *W. F. Ins. Co.*, 12 Wend. 449; *Brown* v. *L. A. Corp.*, 40 Hun, 101.)

*John L. Hill* and *Joseph E. Russell* for respondent. Plaintiff was not chargeable with knowledge or notice of the accident immediately upon the occurrence thereof. The terms of the policy merely required that plaintiff should give notice of an accident with reasonable promptness so soon as circumstances were brought to its attention, which would satisfy reasonable men that an accident had occurred. (*Mendall* v. *F. & C. Co.*, 170 Mass. 171; *Trippe* v. *P. F. Society*, 140 N. Y. 23; *Reynolds* v. *C. F. Ins. Co.*, 47 N. Y. 597; *Bennett* v. *Lycoming*, 67 N. Y. 274; *Inman* v. *W. Ins. Co.*, 20 Wend. 452; *A. S. Co.* v. *Pauly*, 170 U. S. 160.) Under the policy notice must come to an executive officer or some general superintendent of its business before notice could be given the defendant. (*McNally* v. *P. Ins. Co.*, 137 N. Y. 389; *Trippe* v. *P. F. Society*, 140 N. Y. 23; *Reynolds* v. *C. F. Ins. Co.*, 47 N. Y. 597; *A. S. Co.* v. *Pauly*, 170 U. S. 133; *People ex rel. Platt* v. *Wemple*, 117 N. Y. 136; *Weisser* v. *Dennison*, 10 N. Y. 68; *Welsh* v. *G. Am. Bank*, 73 N. Y. 424; *Butler* v. *M. M. L. Ins. Co.*, 184 N. Y. 40.) The managing officers of the assured were guilty of no neglect either in giving notice of the accident or in providing for reasonably prompt information of accidents. (*Mendall* v. *F. & C. Co.*, 170 Mass. 173.) The transfer company, assured, having designated a person to whom reports of accidents should be made, knowledge or information on the part of another servant or employee not brought to the knowledge of the person so designated or to an officer of the company

was not knowledge or information of the transfer company. (*Mendall* v. *F. & C. Co.*, 170 Mass. 173 ; *Butler* v. *M. M. L. Ins. Co.*, 184 N. Y. 337 ; 1 Meyrowetz on Priv. Corp. [2d ed.], 540, 546.)

CULLEN, Ch. J.   The action is brought on an employer's liability insurance policy whereby the New York Transfer Company, a joint stock association, of which the plaintiff is president, was indemnified against liability for injuries to persons or property resulting from any accident caused by the horses or vehicles of the insured in the transportation of goods or freight.   The controversy arises under the following provision of the policy : "The assured, upon the occurrence of an accident and also upon receiving information of a claim on account of an accident, shall give immediate notice in writing of such accident or claim, with full particulars, to the company at its office in New York City, or to the agent, if any, who shall have countersigned this policy."   The facts are as follows : On September 5th, 1895, a truck of the plaintiff's, driven by one Hannan, collided, we must assume, with an open car, injuring a boy named Mills who was riding thereon, though Hannan denied and still denies that any such collision occurred.   A short distance from the scene of the occurrence Hannan was stopped by a policeman and taken back to the scene of the accident, where some discussion ensued as to the cause and nature of the accident.   Hannan walked away.   That evening. Brady, a police officer, was directed by the police sergeant to find Hannan.   Brady, after making inquiry of several persons, found that the truck belonged to the New York Transfer Company.   He went to the company's office at No. 52 Nassau street and told the person in charge there of the accident.   He was directed to go to another stable in Williamsburg, where he was further directed to call upon a man named Sparks at Pier 27, North river, Manhattan.   The police officer went there, saw Sparks, told him of the occurrence, and from the details recited by the police officer, Sparks identified the driver as

being Hannan. He stated that Hannan had then gone for the day. The next morning the police officer again went to Sparks and found that Hannan had been there and left. Hannan was not arrested, the police officer failing to obtain a warrant for him. Hannan testified that on the first or second day after the accident Sparks, who was the head of the freight department, asked him about the accident, and he told Sparks exactly what had occurred. Evidence was given by the mother and father of the injured boy to the effect that on September 15th Sparks came to their house with Hannan, and inquired about the accident; that they told Sparks the boy had been knocked off by a wagon, and that he was in the hospital at the time; that Sparks asked them what they wanted to do about it, and was told in reply that the case was in a lawyer's hands. The first report made by Sparks to the general manager of the company was on October 2nd, and on the following day the first notice of the accident was given by the plaintiff to the defendant by letter. On October 21st the summons and complaint in an action to recover damages for the injuries to Mills were served on the plaintiff, and the next day they were sent with a letter to the defendant. The defendant refused to defend the suit on the ground that the plaintiff had not given immediate notice of the accident, as required by the policy. The plaintiff defended the action and was cast in damages. Thereupon it brought this suit to recover the amount of that judgment and its expenses in defending the suit.

This action has been three times tried. At the first trial the complaint was dismissed on the ground that the plaintiff had failed to give notice of the accident immediately after its occurrence, as required by the policy. The judgment then entered was reversed by the Appellate Division of the second department, which held that it was a question of fact for the jury whether the information received by Sparks or Hannan was sufficient to induce them to believe that Hannan's truck had caused the accident, and to make it their duty to report the occurrence to their superiors. (48 App. Div. 439.) The

case was next tried in conformity with the rulings of the Appellate Division and the question of fact above stated submitted to the jury, who found a verdict for the defendant. Again an appeal was taken to the Appellate Division (this time to the first department), and again the judgment was reversed, the court holding that neither the knowledge of Hannan, the driver, nor of Sparks, the freight agent, was imputable to the plaintiff, and that to charge it with the duty of giving notice to the defendant the knowledge must be brought home to the general superintendent or other officers of the plaintiff association. (96 App. Div. 279.) The third trial was had in accordance with the principles laid down by the appellate court; the plaintiff recovered a verdict, and the judgment on that verdict has been unanimously affirmed by the Appellate Division. The only questions subject to review in this court are, therefore, exceptions to the instructions given to the jury.

The trial court charged : " The knowledge of Hannan and the information of Sparks in no wise constituted notice of the accident to the Transfer Company. Their knowledge is not to be deemed the knowledge of the Transfer Company ; what they heard of the accident is not to be deemed as having been heard by the Transfer Company. It was only when notice was brought to the general superintendent or to one of the officers of the company, some one holding an executive position in the company, either the President, the Secretary, the Treasurer, a member of the Board of Managers, that notice was had by the plaintiff. Notice given to an employee, such as Hannan or Sparks, who had no duty resting upon him respecting this insurance ; who had no duty upon him regarding the giving of notice of an accident to the Casualty Company ; who had no duty imposed upon him regarding the adjustment of any differences between the Transfer Company and the Casualty Company under this policy, was not notice to the plaintiff. In other words, it was not until the superintendent or one of the officers, or managers, to whom I have referred, had heard of this accident that the time began to

run to notify the Casualty Company that it had happened. That is the interpretation which has been put by the higher court upon that provision of the policy, and which interpretation is binding upon you and upon me." To the several parts of this instruction the defendant duly excepted. These instructions were substantially repeated to the jury under several requests to charge made by the plaintiff, to the allowance of which the defendant also excepted.

Thus the jury in the first instance were expressly told that nothing short of information reaching the general superintendent or other general officers or directors of the association, or at least some one who had the duty of adjusting differences between the association and the insurance company, was sufficient to impose on the plaintiff the duty of giving notice to the insurance company. We think that this instruction is not the law. The appeal has been argued on behalf of the respondent mainly on the assumption that the rules of law governing the imputation to the principal of notice received by an agent, control the disposition of the case. This is a mistaken view. The question presented here is not one of mere notice. An instance where the question involved would be merely of notice would arise under the Recording Act, as between a subsequent purchaser for value who records his deed and a prior purchaser who had failed to record his. In that case, if the subsequent purchaser has notice or knowledge of the prior conveyance, his title is subject to that conveyance. But there rests on him no duty to make inquiry or to exercise vigilance to discover if there are any unrecorded conveyances. It is true that facts may come to his knowledge which may make it incumbent on him to make further investigation, but such obligation arises solely from the facts of which he has knowledge. In other words, his legal duty in the premises is passive. He is not bound to act without knowledge. He is not bound in the first instance to seek knowledge or information. In the present case the situation is the reverse. The duty imposed on the insured by his

covenant is not passive but active. Strictly construed, the insured would be bound to give notice immediately after the accident, whether he knew of the occurrence or not. This, of course, would be a wholly unreasonable construction and must be rejected. (*Trippe* v. *Provident F. Society,* 140 N. Y. 23.) The condition of the policy is to be interpreted as meaning after the insured has become apprised of the accident, provided, however, he exercises reasonable diligence to acquire information. There is, therefore, cast upon him the duty of so regulating his business that he may be apprised with reasonable celerity of any accident that may occur in its conduct. Of course, the duty, as already said, is not absolute; it requires only that reasonable care should be taken to acquire the information. If, despite the exercise of reasonable care, the insured fails to acquire the information till after a lapse of time, but on its acquisition gives prompt notice to the insurance company, he complies with the obligation of the policy. Where, however, a master employs many servants and the duty of acquiring information of accidents as they occur is necessarily committed to servants or agents, if the acquisition of such information is an affirmative duty on his part we cannot see why he is not responsible for the negligence or fault of the servants to whom he intrusts the duty, to the same extent as he would be responsible for their negligence or misconduct in any other obligation to third persons. It has been held by the courts below that the plaintiff discharged fully its whole obligation when it promulgated to its servants rules adapted to apprise the association of accidents, whether those servants complied with the rules or not. We see no principle on which that doctrine can rest. There are few exceptions to the general rule that a master is liable for the negligence of his agents or servants in the conduct of his business, such as a charity hospital for the fault of physicians or nurses, a steamship company for the faults of the ship surgeons, but none of them covers this case. In *Critten* v. *Chemical Nat. Bank* (171 N. Y. 219) we distinctly overruled a contention substantially the same as that now before us. In

that case it was contended that a depositor discharged his duty to the bank when he intrusted the verification of his returned checks to a clerk, and was not responsible for the manner in which the clerk discharged that duty. We held that if such a duty existed, as we declared it did, the employer was responsible for the fault of his clerk to the same extent as he would be for the clerk's fault in the conduct of his business in any other respect. Nor do we see what necessary connection there is between the duty of adjusting differences with the insurance company, or serving notice upon it, and the duty of finding out about accidents. They might be committed to the same person, but usually they would not. In the printed rule on this subject, which the plaintiff posted in its stables, the drivers were directed to make report of accidents to the stable foreman, not to any one having charge of the insurance business of the company.

While we thus hold that the plaintiff was chargeable for the delay and neglect of its agents or servants in failing to apprise it of an accident, the occurrence of which they had acquired knowledge or information, this principle must be confined to those agents whose duty it was, either by express regulation of the plaintiff, or by their supervision and control in the natural and proper conduct of business over the subordinate servants by whom the accident had been caused, to transmit such knowledge to their superiors or the company, on which question the notice posted in plaintiff's stables was not conclusive. The courts below have properly held that the knowledge of Hannan, the driver, was not imputable to the plaintiff. The accidents against which the insurance was obtained would in most cases be occasioned by the faults of the company's servants. Considering the natural tendency of a man to conceal or excuse his own fault it would be unreasonable to expect that in every instance he should report an accident, or if he did, report it so dispassionately that the master would be aware of the real danger or liability in which he might stand. Nor should the master be charged with the knowledge or information of a co-servant of the same grade

or rank as the one causing the accident.   The case of Sparks is different.   He was the freight agent at the pier on the North river.   There is a great conflict in the testimony as to his duties and the extent of his supervision and control over the drivers of the trucks.   The drivers reported to him every morning and received instructions from him what goods or packages to carry and to what places to carry them.   It is contended by the respondent that this was the sole extent of his control over the drivers and his duty towards them. On the other hand, there was testimony to the effect that in the ordinary course of business it was the duty and practice of Hannan and the other drivers to report any accident to Sparks. It is not necessary to dilate on the testimony.   It is sufficient to say there was some evidence in the case which would authorize a jury to find that in the ordinary and natural conduct of the business it was the duty of Sparks to receive reports of accidents and transmit them to the general superintendent. If this were the case then the plaintiff was chargeable with the delay of Sparks.

The learned counsel for the respondent relies upon the case of *Mandell* v. *Fidelity & Casualty Company* (170 Mass. 173), which arose under a similar policy to that now before us, as an authority for the proposition that the master must have personal knowledge of the accident before any obligation on his part can arise under this clause of the policy.   It must be conceded that the opinion of the Supreme Court of Massachusetts supports his claim.   It was there held that the plaintiff was not chargeable with knowledge of the accident because his servants had such knowledge.   " Neither his driver, stableman, nor foreman were his agents for the purpose of giving notice to the (insurance) company."   So far as drivers, stablemen and the like are concerned, we concur in the declaration of the learned Massachusetts court, but as to the superior agents or employees whose duty it is to supervise the conduct of the subordinate servants and to report to the master accidents or casualties caused by such inferior servants, we must adhere to the views we have already expressed.

The other objections taken by the appellant to the recovery at the trial court, we think, are not well founded and need no discussion, but for the errors in the charge to the jury which we have pointed out, the judgment below must be reversed and new trial granted, costs to abide the event.

O'BRIEN, EDWARD T. BARTLETT, HAIGHT, VANN, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.