EMPIRE STATE SURETY CO. v. NORTHWEST LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1913.)

No. 2,184.

1. INSURANCE (§ 539*)—EMPLOYER'S LIABILITY INSURANCE—TIME FOR NOTICE OF INJURY—NOTICE "AT ONCE."

In a provision of a policy of employer's liability insurance requiring the assured, on the occurrence of an accident as to which a claim might be made under the policy, to "at once" give notice thereof to the insurer, the words "at once" are synonymous with "immediately," and mean, within the intendment of the policy, within a reasonable time, having in view all of the circumstances of the case; and whether notice is so given is a question of fact.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1328–1336; Dec. Dig. § 539.*

For other definitions, see Words and Phrases, vol. 1, pp. 610–611; vol. 4, pp. 3403–3410.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INSURANCE (§ 668*)—EMPLOYER'S LIABILITY INSURANCE—ACTION ON POLICY
—DEFENSES—FAILURE TO GIVE NOTICE.

A lumber company holding an employer's liability policy, which re-
quired it to give notice to the insurer "at once" on the occurrence of
an accident which might give rise to a claim under the policy, had an
employé injured at a logging camp in charge of a foreman, who took
the injured man to a hospital, where he remained 11 months, and then
commenced an action against the company. Neither the superintendent
in general charge of the mill and the camps, nor the other officers of
the company, who were at a distance, had any knowledge of the injury
until service of the summons, and they then notified the insurer, which
defended the suit under a stipulation that it should be without preju-
dice to its right to object to want of notice. There was a judgment
which the company paid and then brought suit on the policy. *Held,*
that the court could not say as matter of law that the notice was not
given in compliance with the requirement of the policy, but that the
question was properly submitted to the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–
1770; Dec. Dig. § 668.*]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern
Division of the Western District of Washington; C. H. Hanford,
Judge.

Action at law by the Northwest Lumber Company against the Em-
pire State Surety Company. Judgment for plaintiff, and defendant
brings error. Affirmed.

This is an action instituted by the Northwest Lumber Company against
the Empire State Surety Company to recover on a policy of liability insur-
ance. The lumber company prevailed, and the surety company prosecutes a
writ of error in this court.

The policy of insurance upon which the action is prosecuted contains the
following clause: "Assured on the occurrence of an accident in respect of
which claim can be made under this policy shall at once given written no-
tice thereof to the company at New York or to the company's duly authorized
agent. Assured shall give like notice with full particulars of any claim made
on account of an accident so reported, and, if steps are taken to enforce
such claim by suit or otherwise, assured shall also deliver to the company
all papers and information pertaining thereto immediately upon receipt
thereof, whereupon the company shall at its own cost undertake on behalf
of and in the name of assured the settlement of such claim or the defense
of such suit and the prosecution of any appeal which it may undertake."

The lumber company was engaged in getting out logs, and had a crew of
men working under a foreman named Dan Williams. Among the crew was
one John Hall, who was injured, in that his leg was broken. This occurred
November 4, 1908. Hall instituted an action against the lumber company in
the superior court of the state of Washington to recover. He served sum-
mons and a copy of the complaint therein October 26, 1909, and later re-
covered judgment for $10,000.

Trial was had in the case at bar before a jury. When the testimony was
fully submitted, the court was requested to direct a verdict of nonsuit, which
was denied. The testimony given at the trial, so far as pertinent, is con-
tained in the bill of exceptions, which recites:

"That on the 4th day of November, 1908, one John Hall, an employé of
the plaintiff, who came within the terms of the policy, working in one of
the three logging and loading camps maintained by the plaintiff at or near
Kerriston, Wash., was injured by having his leg broken, and that he was
there working under Dan Williams, a foreman of the gang or camp where
the said Hall was injured, all being foreigners and speaking the English

language very little. That the company maintained three logging camps for getting out logs and loading the same on cars, a general sawmill plant where it operated its mills, or did its sawing, and a logging railroad for carrying lumber and logs, and that over all was a superintendent named John McRea, who had general charge and control of all the affairs at Kerriston, Wash., and general affairs of the plaintiff were in charge of its general secretary and treasurer, L. G. Horton, at Seattle. That about 11 months after the injury the said John Hall brought an action for damages in the superior court of King county, Wash., which was prosecuted, and a judgment recovered in the sum of $10,000, which cause was afterwards appealed to the Supreme Court of the state, and there affirmed, and thereafter with the costs paid by the plaintiff. That the plaintiff's superintendent aforesaid and the secretary cestified that, until suit was brought by said Hall, they had no personal knowledge of the occurrence of the accident whereby the said John Hall was injured, the other officers of the company having no knowledge of the affair, and made no report thereof to the defendant, or any agent thereof, and gave no notice of the accident or anything pertaining thereto, until the service of the summons and complaint in the case brought by Hall in said superior court on the 26th day of October, 1909, whereupon notice was at once given to defendant, and, when the notice was given, the defendant reserved its rights in an agreement made between the parties to this action regularly introduced in evidence as exhibit ——, which agreement is as follows:

"Nov. 15th, 1909.

"'Northwest Lumber Company, White Building, Seattle, Wash.     •

"'Gentlemen:—In regard to the case of Hall against you pending in the superior court of this county on summons and complaint served Oct. 26th last, I beg to say that in accordance with our understanding I will defend this action as the representative of the Empire State Surety Company, but with the understanding that it will not prejudice your rights, or that of the surety company, respecting the matter as to whether notice of this accident has or has not been given. The matter of notice referred to in the policy which you hold insuring you will be a matter of future adjustment, and without in any way affecting my appearance as attorney in the case or your consenting to my appearance as your attorney in this case and upon the record.

"'If this is agreeable to you, please indicate it by your approval hereon, and that will be satisfactory to all parties.

"'Yours very truly,                    [Signed]  John P. Hartman.

"'The foregoing is read and approved the date first herein stated.

"'[Signed]  Northwest Lumber Co., G. B. Barclay, Pres.'

—and the said agreement had not been thereafter altered or amended at any time. That after the accident to the said John Hall, whose leg was broken, he was taken in charge by the said foreman, Dan Williams, and from there conveyed first upon the logging road to a railroad, and thence to a hospital in Seattle, about 40 miles distant from the place where the accident occurred, and all being in King county, Wash., in which hospital he remained about 11 months. Thereupon the defendant offered testimony tending to show that it had no knowledge or information in any way of the accident to John Hall occurring November 4, 1909, until after the service of summons and complaint in his case as aforesaid. That because it did not have immediate notice of the accident it was greatly prejudiced and damaged, in that it could not prepare for the trial of the case, as it was bound to under the terms of the policy if notice was immediately given, that it was unable to prepare to defend and defend the case and to obtain testimony, and that prejudice resulted against the defense because of the want of notice, all of which the witness claimed was prejudicial to the interests of the defendant, and all of which the witness claimed was caused by want of compliance with the terms of the policy insuring against loss, for which this suit is brought, and upon cross-examination plaintiff showed that all eyewitnesses were at the trial for Hall save one, whose whereabouts was

unknown, which trial was held in the state court of Washington about April 11, 1910, which witnesses were all called for the said Hall."

John P. Hartman, of Seattle, Wash., for plaintiff in error.

George Donworth, Ovid A. Byers, Alpheus Byers, and Elmer E. Todd, all of Seattle, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] The question is presented upon this record whether the court should have determined as matter of law that notice was not given by the lumber company to the surety company as required by the policy of insurance. The surety company claims that notice was not so given. The particular clause under which the controversy arises reads:

"Assured on the occurrence of an accident in respect of which claim can be made under this policy shall at once give written notice thereof to the company at New York or to the company's duly authorized agent."

The words "at once" are synonymous with "immediately," and doubtless mean, within the intendment of the policy, within a reasonable time, having in view all the circumstances of the case. The purpose of the notice is manifestly to give the surety company opportunity to inform itself about the case and properly prepare for its defense. In the nature of things it ought to be given as soon after the accident as circumstances will permit, as ordinarily it is less difficult to assemble the evidence relating to the facts at issue when the transaction is recent than when it is allowed to rest for considerable time. The Supreme Court of New Hampshire (Ward v. Maryland Casualty Co., 71 N. H. 262, 51 Atl. 900, 93 Am. St. Rep. 514), in determining the meaning of the word "immediate" used in a like sense as the words "at once" in the present policy, has held that it signifies due diligence under the circumstances of the case, and without unnecessary and unreasonable delay, and that whether the notice is so given is a question of fact. This case has the express approval of the federal Supreme Court. Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 346, 22 Sup. Ct. 833, 46 L. Ed. 1193.

[2] It is self-evident that a party cannot give notice of an accident in respect of which a claim can be made until he himself is informed of it or has knowledge concerning it, and he could not be expected so to do. The clause (F) alluded to does not require that he shall give the notice whether he has such knowledge or information or not. The assured is, however, charged with an active, not merely a passive, duty in the exercise of reasonable care and diligence in the management, supervision, and ordering of his business, so that he may be readily informed of accidents out of which claims for damages may arise. He should adopt such measures and promulgate and require the enforcement of such rules and regulations as are reasonably calculated to insure his obtaining prompt and definite information, and, when he has acquired information of the fact, then his policy requires that he shall give notice "at once" to the surety company. Mandell v. Fidelity & Casualty Co., 170 Mass. 173, 49 N. E. 110, 64 Am. St. Rep. 291:

Woolverton v. Fidelity & Casualty Co., 190 N. Y. 41, 82 N. E. 745, 16 L. R. A. (N. S.) 400.

In the case at bar there is testimony tending to show that neither John McRea, the superintendent of the lumber company and in general charge and control of the affairs at and about Kerriston, near which place the accident occurred, nor L. G. Horton, the secretary and treasurer of the company, residing at Seattle, who was in charge of the general affairs of the company, had any personal knowledge of the occurrence of the accident whereby Hall was injured, and that the other officers of the company, having no knowledge of the affair, made no report of it to the defendant, or to any agent thereof, and gave no notice of the accident or anything pertaining thereto, until the service of the summons was had in the action instituted by Hall to recover from the lumber company October 26, 1909, whereupon notice was at once given to the surety company.

It does not appear what rules and regulations the lumber company had devised to obtain prompt information of the occurrence of accidents of the kind. It does appear, however, that Hall was working under Dan Williams, who was foreman of the gang or camp where Hall was injured, and that he was taken in charge by the foreman and conveyed to a hospital in Seattle, 40 miles distant, where he remained for about 11 months. It is claimed that Williams was an agent of the lumber company for giving notice to it of the accident, and that, therefore, the company was bound by his knowledge. This is really the crux of the controversy here.

It does not appear that Williams was specially charged by instructions, or by rule, or otherwise, with the duty of giving information to the lumber company of the happening of such accidents, and we are left to determine the question from the mere fact that Williams was foreman of the gang or camp where Hall was injured. The Mandell Case, supra, is in point. A driver for Mandell, who kept stables, ran over a man and injured him. Mandell's stables were in South Boston, where his teams were kept, and his own stand was in the city proper. He visited the stables at some time daily, but had a foreman who started the teams in the morning and looked after the stand when he was not there. Mandell directed where the teams were to go and what they were to do, and had oversight over his own business. The court held that he was not chargeable with knowledge of the accident because his servants had such knowledge, and that "neither his drivers, stablemen, nor foreman were his agents for the purpose of giving notice to the company." This is in effect concurred in by the Supreme Court of New York in the Woolverton Case, supra. In the latter case, however, the knowledge of the accident was communicated to the officer at the head of the freight department, the company being engaged in the freighting of goods by means of vehicles drawn by horses, and it was held that the knowledge of such agent was the knowledge of the company. In this connection the court says:

"While we thus hold that the plaintiff was chargeable for the delay and neglect of its agents or servants in failing to apprise it of an accident, of the occurrence of which they had acquired knowledge or information, this prin-

ciple must be confined to those agents whose duty it was, either by express regulation of the plaintiff, or by their supervision and control in the natural and proper conduct of business over the subordinate servants by whom the accident had been caused, to transmit such knowledge to their superiors or the company, on which question the notice posted in plaintiff's stables was not conclusive. * * * Nor should the master be charged with the knowledge or information of a coservant of the same grade or rank as the one causing the accident."

The Supreme Court of Minnesota seems to be in conflict with the holding of these cases, the court saying, in Northwestern Telephone Exch. Co. v. Maryland Casualty Co., 86 Minn. 467, 469, 90 N. W. 1110, 1111:

"Appellant is a foreign corporation, and, instead of undertaking the trouble and expense of having agents of its own to look up the facts surrounding occurring accidents, it chose to exact from the telephone company an agreement to be furnished that information, and, having contracted to furnish it, respondent's foreman and men in charge of work when an accident happens are the company's representatives and agents for that purpose, and the duty rests upon them to report to the proper officers of the company."

The terms of the policy in that case were:

"The assured, upon the occurrence of an accident, shall give immediate notice thereof, in writing, with full particulars, to the home office at Baltimore, Md., or to its duly authorized agents."

We are impressed, however, that the doctrine of the Massachusetts and New York cases is the sounder, and that we cannot say as a matter of law, the mere fact appearing that Williams was the foreman of a gang or camp in which Hall was working, and nothing else, that there was imposed upon him the duty of informing the lumber company of the fact, or that his employment in such a capacity carried with it the obligation or responsibility of apprising his employer or principal of all accidents occurring about the work within his knowledge. It must be conceded that it is a peculiar circumstance that neither McRea nor Horton should have learned of an accident of such grave nature for more than eleven months after its happening, but the jury has found on that subject, and its finding is conclusive upon this court. On the other hand, it does not appear that the surety company has been prejudiced in its rights by reason of any delay in being informed or notified of the accident, and it is altogether probable that justice has been done in the premises.

But one other question remains. The court gave an instruction as follows:

"The jury, therefore, are required to determine from the consideration of the evidence in the case whether that condition of the policy has been met by the plaintiff. That notice was given is undoubtedly true, as shown by the evidence. The question is, was it given at once, and that is a question for the jury to determine from a consideration of all the circumstances in the case whether the plaintiff acquired its rights under this policy by giving prompt notice of the happening of the injury. The degree of promptness, of course, depends upon all the circumstances of the case. When did the accident happen, and when did the plaintiff in the case become informed of it so as to be in a position to give notice? because it could not give the notice until it did know it. But in law it would be presumed to know what would have been known in the exercise of intelligence and vigilance such as business men conducting important business affairs usually do have when

they are attending to their business properly, when they have efficiency to their service. If that notice was not given at once, as I have defined this phrase, the plaintiff has failed to make out a case, and your verdict should be for the defendant."

It is urged that this instruction does not state the law applicable; but, without discussing it in particular, it would seem that the instruction was quite as favorable to the plaintiff in error as it could reasonably ask.

The judgment of the District Court will be affirmed.

ROSS, Circuit Judge, dissents.