John S. Melcher, Respondent, *v.* The Ocean Accident and Guarantee Corporation, Limited, Appellant.

First Department, November 17, 1916.

**Insurance — accident insurance — duty of assured under policy to give notice of accidents.**

Under a policy of accident insurance requiring the assured to give immediate notice to the insurer of accidents, the assured is bound to give notice when he receives notice or in the exercise of reasonable care would have received notice.

It is the duty of the assured under such a policy as a condition precedent to the liability of the company to give it immediate notice of an accident of which he has notice or should have known, involving a possible loss under the policy, and of the facts he knows relating thereto in order that it may investigate the same and protect its interest.

This duty is not discharged by giving notice to the company of accidents which to the knowledge of the assured *necessarily involved personal injuries.*

Where the assured under such a policy through his superintendent knew that there had been an accident to an employee, from which there

might be a possible liability under the policy, but failed to notify the company which received no notice thereof for more than four months and then by a letter from an insurance broker employed by the assured, the latter has forfeited his right to recover under the policy.

APPEAL by the defendant, The Ocean Accident and Guarantee Corporation, Limited, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of December, 1915, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of December, 1915, denying defendant's motion for a new trial made upon the minutes.

*Frederick W. Catlin,* for the appellant.

*Frederick B. Campbell,* for the respondent.

LAUGHLIN, J.:

This is an action on a policy of insurance issued by the defendant to the plaintiff on the 9th day of October, 1912, whereby, in consideration of the annual premiums, the defendant insured him against accidents upon and adjacent to his apartment house known as the Chatsworth apartments, extending from Seventy-second street, opposite Riverside drive, to Seventy-first street, for the period of three years. It is conceded that the premiums were paid by the assured in accordance with the terms of the policy, and that one Henry Didier was injured on the premises on the 3d day of November, 1913, from which injuries he died on the twenty-second day of March thereafter; that a claim for his death through the alleged negligence of employees of the plaintiff was made by his administrator against the plaintiff which was compromised by the plaintiff by the payment of $4,000; that such payment was made pursuant to a stipulation between the attorneys for the parties hereto by which the settlement of the claim was to be deemed the same as if a judgment for the amount paid had been recovered by the administrator against the plaintiff. The single question presented by the appeal is whether the plaintiff performed his duty under the contract to give the defendant immediate notice of the accident.

By the terms of the policy the defendant agreed, among

other things, " To indemnify the assured against loss from the liability imposed by law upon the assured for damages, on account of bodily injuries (including death at any time resulting therefrom) accidentally suffered, or alleged to have been suffered, during the policy period defined in said statements, by any person · or persons, while within or upon the premises * * * or upon the sidewalks or other ways immediately adjacent thereto," and agreed " To contest claims and defend suits, even if groundless, made or brought against the assured on account of such bodily injuries or death," unless it elected to settle such claims or suits; and to pay all costs taxed against the insured in any legal proceeding defended by it according to the contract of insurance.   The agreements on the part of the insurance company were expressly made *subject to certain conditions,* and among others the following, viz.: " The assured, upon the occurrence of an accident, shall give immediate written notice thereof, with the fullest information obtainable at the time, to the American Head Office of the Corporation, or to its duly authorized agent.   The assured shall give like notice, with full particulars, of any claim made on account of such accident. If any suit is brought against the assured, to enforce such claim, the assured shall immediately forward to the American Head Office of the Corporation every summons or other process that may be served upon the assured."   It was further provided in the policy that the premium charged was based, among other things, upon "specific charges for * * * elevators, escalators, moving platforms or other hoisting devices (except dumbwaiters)" and on the " statements" which by the terms of the policy the plaintiff warranted to be true.   There was, in the statement, a complete description of the apartment house, including the number of passenger and freight elevators.   It was stated that there was one passenger elevator with twelve landings, and two with thirteen landings, and two passenger and freight elevators with fourteen landings.

The premises were in charge of one Moore as superintendent and he was furnished with blanks for reporting accidents to the defendant, and the duty was imposed upon him by the plaintiff to report accidents to the defendant in accordance with the policy of insurance.   Upon the 3d day of November, 1913,

First Department, November, 1916.          [Vol. 175.

Didier, who was a hunchback and was known to Moore to be so deformed, but was known to him only as Gracio, and a helper, both in the employ of M. Abbott's Sons, came to the premises to repair a passenger elevator at the thirteenth floor. There was a freight elevator shaft about one foot from the passenger elevator shaft, and part of the work to be done by Didier and his helper consisted in inclosing the side of the passenger elevator towards the freight elevator with strips of sheet iron or tin. In the performance of that work it became necessary for Didier to stand on an I beam between the two shafts at the thirteenth floor in a position where he would necessarily be struck by the freight elevator if it were operated to that floor. Moore, at the request of Didier, directed the operator of the freight elevator not to go above the twelfth floor; but this order was disobeyed and the elevator went up while Didier was standing on the I beam, evidently with his back toward the freight elevator shaft, and it struck him in the buttocks and lifted him off his feet about twelve inches into a sitting posture. Didier continued working, but he sent for Moore, who went up to the thirteenth floor, using the freight elevator to the twelfth and then walking up one flight of stairs. Didier informed Moore that a freight elevator had come up and struck and raised him about twelve inches into a sitting posture, and requested that the operator of the elevator be directed to exercise more care. Moore testified that he asked Didier whether he was hurt and Didier replied "no," but that "he was damned badly scared;" that he worked from that time, which was about three o'clock, until he finished the job, about five o'clock that afternoon, and that he appeared to be all right and made no further complaint. Moore also testified that after his interview with Didier he asked the elevator man about the incident and was informed by him and a boy, who claimed to have been in the elevator at the time, that the elevator did not go high enough to strike Didier; that he instructed the elevator operator to be more careful; but did not report the incident to his employer or to the insurance company. On the sixteenth or seventeenth of February the plaintiff received from an attorney employed by Didier, a letter under date of February 14, 1914, prior to the death of Didier, notifying him that

Didier was seriously injured at the Chatsworth apartments on the 3d of November, 1913, while making certain repairs in an elevator shaft in the building through the negligence of one of the plaintiff's employees in operating an elevator; and that the injury was caused by his being struck in the spine by an elevator operated above the twelfth floor in violation of an agreement between Didier and Moore; and the attorney suggested that the plaintiff investigate the matter and confer with him. The first notice that the defendant had of the accident was by the delivery of this letter to it by an insurance broker, employed by the plaintiff, on the 17th day of February, 1914. On the next day the defendant sent an adjuster to investigate the matter. The adjuster called on Moore and reduced what Moore said to him to writing in the form of a statement which Moore signed. Before making the statement Moore had been informed that the hunchback's name was Didier. In that statement Moore said, after stating the circumstances under which Didier came to work on the premises, that Didier complained to him that the elevator came up " and struck him " and that Didier asked him to instruct the elevator boy to be more careful, and that he did so; that Didier " made no complaint to me that he was seriously hurt and I, therefore, made no report of any kind to any one;" that " about six weeks ago a young man who said he represented Didier came here and asked permission to investigate. This I denied him. I made no report and heard nothing further until Mr. Bacon, our agent, spoke to me of it day before yesterday." The young man to whom Moore referred in his statement as having come there to investigate was in court, and was not called as a witness. The only evidence with reference to that incident, other than said statement, is the testimony of Moore who said that a young man claiming that he was sent by a lawyer to investigate an accident to some one by the name of Didier on the tenth floor of some building at Seventy-second street and Riverside drive called on him; that he did not know the hunchback Gracio by the name of Didier and that this young man did not inform him whether the accident was to a man, woman or child, merely to some one by the name of

Didier; that the young man did not know how the accident happened; and he denied that he refused permission to the young man to investigate; but he admitted that he read over the statement before he signed it; but claimed that the statement that he denied the young man permission to investigate was an error.   Moore also denied the correctness of the written statement that Didier said he was not seriously hurt; and testified that he informed the adjuster in substance that Didier said he was not hurt at all.   The adjuster who called on Moore testified that he accurately reduced to writing the substance of what Moore said; and that Moore signed it without questioning its correctness.

The court, in submitting the case to the jury, instructed them that it was the plaintiff's duty to give immediate notice of the accident to the insurance company; but that it was not the plaintiff's duty to report a mere accident unless it involved, or there was reason to believe it involved, personal injuries to some one on the premises.   The learned counsel for the appellant contends that the instructions given to the jury logically required the direction of a verdict in favor of the defendant, for the reason that the plaintiff, through Moore, his superintendent, was aware of the accident and of the circumstances attending it the day it occurred, even if the information which Moore received led him to believe that Didier was not injured.

If an accident occurs the only duty devolving on the assured under such a policy is to give the insurance company notice when he receives notice or in the exercise of reasonable care would have received notice thereof.   (*Woolverton* v. *Fidelity & Casualty Co.*, 190 N. Y. 41; *Trippe* v. *Provident Fund Society*, 140 id. 23.)   It is, however, the duty of the assured under such a policy, as a condition precedent to the liability of the company, to give it immediate notice of an accident, of which he has notice or should have known, involving a possible loss under the insurance policy, and of the facts he knows relating thereto, in order that it may investigate the same and protect its interest.   (*Utica Sanitary Milk Company* v. *Casualty Company of America*, 210 N. Y. 399; *National Construction Co.* v. *Travellers' Ins. Co.*, 176 Mass. 121; *Hatch* v.

*United States Casualty Co.*, 197 id. 100; *Travellers' Ins. Co.
v. Meyers*, 62 Ohio St. 529.  See, also, *Quinlan v. P. W. Ins.
Co.*, 133 N. Y. 356; *Whiteside v. North American Accident
Ins. Co.*, 200 id. 320; *Piercy v. Frankfort Marine Accident &
Plate Glass Ins. Co.*, 142 App. Div. 839; *Whitlatch v. Fidel-
ity & Casualty Co.*, 149 N. Y. 45.)  The plaintiff, through his
superintendent Moore, knew that there had been an accident
from which there might be a possible liability under the policy,
for the accident was to one lawfully on the premises.   This
duty is not discharged by giving notice to the company of acci-
dents which to the knowledge of the insured *necessarily involved
personal injuries*, and on this point we are of opinion that the
learned trial court erred.   It was an accident of a nature *which
might give rise* to a claim for personal injuries for which the
insurance company under the policy would be called upon to
respond.   It is notice of *such an accident* that is required and
not notice that personal injuries have been sustained.   It is evi-
dent that Moore considered it an accident which might give
rise to a claim under the policy, for he inquired whether Didier
had been injured.   What Didier said to him at the time did not
preclude Didier or his administrator from subsequently making
a claim; and in relying thereon and refraining from giving
notice to the company the plaintiff, through his superintendent,
took the risk of a claim being made, for which, owing to his
failure to notify the company of the accident, he would have
no claim for redress against it.   That this is the true construc-
tion of the provisions of the policy is emphasized, I think, by
the obligations which the defendant assumed by the policy with
respect to defending plaintiff against unfounded claims and by
the company's requiring a statement with respect to the num-
ber of the elevators and a description thereof, and by the agree-
ment between it and the assured that the premium is based
upon the correctness of this information.   Unless this be the
true construction the duty of the assured to give notice of an
accident would depend, not upon his knowledge that there had
been an accident, but upon the information which he received
with respect to whether or not those involved in the accident
had or had not sustained personal injuries.   That, I think,
would be an unreasonable construction.   It follows, therefore,

that the judgment and order should be reversed, with costs, and the complaint dismissed on defendant's motion at the close of the evidence which was denied and to which an exception was duly taken.

CLARKE, P. J., MCLAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed, with costs, and the complaint dismissed, with costs.