FIRST FINANCIAL INSURANCE COMPANY, Plaintiff,

v.

JETCO CONTRACTING CORP., New York University and Gavin Hanna, Defendants.

Jetco Contracting Corp. Third Party Plaintiff,

v.

Admiral Insurance Company, Royal Insurance Company, the NIA · Group, LLC., Kelley & Kelley Broker, Inc., GLN Worldwide Ltd., and Rockledge Scaffolding Corp., Third Party Defendants,

New York University, Second Third Party Plaintiff,

v.

Kelley & Kelley Brokerage, Inc., and GLN Worldwide, Ltd., Second Third Party Defendants.

No. 99 CIV. 8664(NRB).

United States District Court, S.D. New York.

Nov. 20, 2001.

**OPINION AND ORDER**

BUCHWALD, District Judge.

Plaintiff, First Financial Insurance Company ("First Financial") brought this declaratory judgment action seeking a declaration that a general liability insurance policy issued to Jetco Contracting Corp. ("Jetco") does not provide coverage to the defendants Jetco or New York University ("NYU") for a personal injury claim made by Gavin Hanna ("Hanna") against Jetco and NYU. On July 21, 2000, this Court issued an opinion granting in part and denying in part plaintiff's motion for summary judgment. Familiarity with this prior opinion is assumed. Subsequently, a bench trial was held to determine the remaining issues between First Financial

and Jetco. More specifically, the two issues addressed at the trial were (1) the reasonableness of Jetco's failure to notify First Financial of its claim for coverage, and (2) whether First Financial's disclaimer of coverage failed for lack of timely notice. Having concluded that Jetco's failure to give notice was not reasonable and that First Financial's disclaimer was timely, we find that First Financial properly disclaimed insurance coverage on Hanna's claim.

## A. Reasonableness of Jetco's Notice of Claim to First Financial

█ There is no question, as discussed in our opinion of July 25, 2000, that the seven month delay between when Jetco President Richard Franco ("Franco") learned of Hanna's injury and visited the construction site, and when First Financial learned of the claim, was presumptively unreasonable as a matter of law. However, the question for trial was whether Jetco's good faith and reasonable belief in non-liability excused its failure to provide timely notice. See Sparacino v. Pawtucket Mutual Insurance Co., 50 F.3d 141, 143 (2d Cir.1995) (describing the standard for reasonable belief as whether the circumstances known at the time would have suggested to a reasonable person the possibility of a claim). The burden falls on Jetco to prove that the delay in notifying First Financial was excusable. Olin Corp. v. Insurance Co. of North America, 966 F.2d 718, 724 (2d Cir.1992).

█ At trial, both Franco and RMG investigator Anthony Galizia ("Galizia"), who interviewed Franco in connection with this incident, testified that Franco had not felt it necessary to notify First Financial of the claim because Hanna was not an employee of Jetco and because no Jetco representatives were present at the site on the day of the accident. See Tr. at 19; Ex. 9 at 14–

16. However, an insured may not simply assume that there will be no potential liability, but rather must investigate the incident to determine whether potential liability exists. See Woolverton v. Fidelity & Casualty Co. of New York, 190 N.Y. 41, 47–48, 82 N.E. 745 (1907) (imposing a duty of reasonable investigation on the insured). At trial, Franco's testimony indicated that he conducted no such investigation, despite his awareness that under Jetco's contract with NYU, Jetco was to fully indemnify NYU for any liabilities incurred on the construction project. See Tr. at 158; Ex. 7 (contract between NYU and Jetco). Furthermore, the contract between NYU and Jetco granted to Jetco full supervisory control of the construction project, including control over subcontractors. See Ex. 7 at 8. Franco himself asserted familiarity with the reality that in height-related accidents, all construction project participants are typically sued. See Tr. at 159–60. Indeed, Jetco had previously been involved in a similar lawsuit, in that case as the subcontractor, in which a Jetco employee sued the general contractor. See Tr. at 19–22; Ex. 13. Thus, based on the evidence presented at trial, Franco's stated belief in non-liability was neither objectively nor subjectively reasonable. For all of these reasons, we find that Jetco's failure to notify First Financial of Hanna's claim was unreasonable.

## B. Timeliness of First Financial's Disclaimer

█ As discussed in our prior opinion, the reasonableness of the time an insurer takes to disclaim coverage is measured from the date it or its agent had sufficient information to determine whether disclaiming coverage is proper. See U.S. Underwriters Ins. Co. v. Held Brothers, Inc., No. 97 Civ. 5407, 1998 WL 355425, *3, 1998 U.S. Dist. LEXIS 9694, at *8 (S.D.N.Y.

June 29, 1998). Furthermore, the insurer bears the burden of establishing that its delay in disclaiming coverage was reasonable. *See Travelers Ins. Co. v. Charter Oak Fire Ins. Co.*, No. 93 Civ. 0127E, 1997 WL 9792, at *6 (W.D.N.Y. Jan.2, 1997). We find that in this case, First Financial has met its burden of showing the delay to be reasonable.

 First Financial learned of the Jetco claim in February when it heard about the Hanna lawsuit from NYU. *See* Tr. at 53–55. At this point, First Financial hired RMG to conduct a review of Jetco's claim. *See id.* Because Franco was out of the country for most of March, his interview was conducted on March 30, 1999, *see* Ex. 9, at which time investigator Galizia learned that Jetco had known of the Hanna accident almost immediately but had failed to file a claim. Galizia's report was issued on April 8, reviewed shortly thereafter by his supervisor Gay Wiener at RMG, and then forwarded to First Financial claim manager Robert LaFrance on April 12. *See* Tr. at 46, 57. The question presented at trial was whether the delay between March 30 and First Financial's May 17 disclaimer was reasonable.

We find that this 48 day delay was reasonable under the circumstances. On behalf of RMG, Galizia testified that RMG had been instructed by First Financial to seek out additional sources of insurance coverage, possibly to benefit First Financial, but largely to benefit the insured by finding an additional source of coverage. *See id.* at 39. RMG employee Gay Wiener testified that subsequent to RMG's investigation showing that Jetco's claim was not timely, RMG sent out letters to Jetco's other insurance carriers requesting that they take over the handling of the claim. *See id.* at 47–49. It was only after discovering no additional source of coverage that RMG and First Financial conferred and

First Financial directed that a declination letter be sent to Jetco. *See id.*

Both First Financial and Jetco called experts in insurance practices to testify at the trial. First Financial's expert John Saulino testified that it is entirely appropriate for an insurer to seek outside sources of coverage for an insured in order to "protect the insured to the greatest extent possible." *Id.* at 75–76. He also testified that it is "more appropriate" for the insurance company to seek additional coverage before issuing the declination, and that the amount of time taken by First Financial under the circumstances was proper in his experience in the insurance industry. *Id.* at 76–86. In opposition, Jetco's expert Robert F. Hall testified that he believed a two-week period to be the upper limit on disclaiming coverage once an insurer becomes aware of the facts giving rise to the declination. *See id.* at 116. He also testified that once the decision has been made to disclaim coverage, it is "inappropriate as part of [the] investigation to determine whether there is other insurance available for that policyholder." *Id.* at 113.

First Financial's expert's opinion is more consistent with the case law, which does not include a two-week upper limit. Moreover, as a policy matter, First Financial's expert makes the better argument. The effort by First Financial to find additional sources of coverage was clearly for Jetco's benefit. *See id.* at 64, 79–80. A contrary approach such as that suggested by Jetco's expert would force insurance companies to disclaim coverage before seeking additional sources of coverage, thus creating unnecessary tension between insureds and insurers and decreasing the incentives of insurance companies to seek additional sources of coverage for claimants once they have realized that to do so would be of no immediate financial benefit

to the insurer. Moreover, while prejudice is of no legal relevance here, it bears noting that Jetco suffered no prejudice from the time it took First Financial to investigate additional sources of coverage. For these reasons, we find that First Financial's disclaimer was made within a reasonable time.

### Conclusion

For the foregoing reasons, we find that Jetco's failure to timely notify First Financial of a possible claim was unreasonable and that First Financial's disclaimer was timely. As there is no longer a basis for this Court's jurisdiction under 28 U.S.C. § 1332, retention of state law claims under supplemental jurisdiction is left to the Court's discretion. 28 U.S.C. § 1367(c)(3); see *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994). We decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, we dismiss them.

The Clerk of the Court is respectfully instructed to enter judgment for First Financial declaring that First Financial does not owe Jetco a defense and indemnification in the Hanna action. Furthermore, the Clerk is directed to close the above-captioned case.

**IT IS SO ORDERED.**